BISHOP, J.
 

 For convenience we shall refer to the first of the above cases, with its three defendants, as the Lopez case, and the second one, with its sole defendant, as the Fagan case. There was no trial in either ease; all of the defendants pleaded guilty, judgment following immediately without the taking of any evidence and without any reference to or report from a probation officer.
 

 PROCEEDINGS IN LOPEZ CASE.
 

 In the Lopez case the three defendants were charged with petty theft of personal property of the approximate value of $15. Represented by counsel, they entered a plea of guilty, and then the following dialogue took place between the trial judge and Mr. Lynch, the attorney for the defendants:
 

 Mr. LYNCH: “These defendants desire at this time to apply for probation prior to the imposing of sentence by the court.” (At this time each of the defendants stated “Yes” and nodded his head affirmatively.) Mr. LYNCH: “If your Honor please, I am informed that this is the first offense for these three young men, and I therefore move the court that they be permitted to file application for probation.” The COURT: “Permission to file application for probation denied.” Mr. LYNCH: “Does your Honor mean that these defendants will not be permitted to file for probation ? ’ ’ The COURT:
 
 ‘ ‘
 
 That is the order of the court. ’ ’ The defendants then waived the statutory time for sentence and the trial court announced: “The sentence will be as follows: As to each defendant I hereby sentence the defendants and each of them to 180 days in the City Jail; 90 days of said sentence is ordered suspended; 90 days to be served. ’ ’
 

 
 *Supp. 858
 
 PROCEEDINGS IN FAGAN CASE.
 

 The defendant Fagan was charged in four counts with the following offenses: First, with driving a vehicle upon a public highway while under the influence of intoxicating liquor, in violation of section 502, Vehicle Code; second, with being and appearing in a state of drunkenness and intoxication in and upon a street, sidewalk, highway and railroad depot and in a place open to public view, contrary to section 41.27 of the Los Angeles Municipal Code; third, with driving a motor vehicle on a public highway without then and there holding a valid operator’s or chauffeur’s license, an act made a misdemeanor in section 250 of the Vehicle Code; and fourth, with driving a motor vehicle on a public highway after his operator’s and chauffeur’s license and his driving privileges had been suspended or revoked, contrary to section 332, Vehicle Code. All these acts were done, according to the allegations of the complaint, on or about the 26th day of October, 1940, and the three offenses that involved driving a vehicle were committed on Hollywood Boulevard.
 

 Appearing for arraignment on these charges without counsel, the defendant pleaded guilty to each count and waived postponement of sentence. 1 ‘ The Court thereupon, ’ ’ we read in the settled statement on appeal, “immediately pronounced sentence as follows:
 
 Count One:
 
 One hundred and eighty days, suspended two years; probation granted, defendant to serve one hundred and seventy-eight days;
 
 Count Two:
 
 One hundred and eighty days, suspended two years; probation granted, defendant to serve one hundred and seventy-eight days;
 
 Count Three:
 
 One Hundred and eighty days, suspended two years; probation granted, defendant to serve one hundred and seventy-eight days;
 
 Count Four:
 
 One Hundred and eighty days, suspended two years; probation granted, defendant to serve one hundred and seventy-eight days. The sentences on each count to run consecutively. ’ ’
 

 DISCUSSION OF LOPEZ CASE.
 

 In the absence of a denial of probation, the suspension of a sentence or a part thereof has been recognized as in fact the granting of probation, although not accompanied by any other evidence that that was the court’s purpose.
 
 (In re
 
 Herron, [1933] 217 Cal. 400 [19 Pac. (2d) 4].) The
 
 *Supp. 859
 
 proceedings just preceding the imposition of the sentence in this case, viewed in the light of the immediate subsequent action taken by the trial court, may possibly be explained as not a denial of probation, but as expressive of a desire on the part of the trial court to avoid referring the matter to the probation officer and thereafter having to consider his report, before granting probation. If this explanation is the correct one, then we have an error of procedure, which occurred before judgment and so is reviewable on an appeal from the judgment. (Sec. 1469, Pen. Code.) The error of procedure consists in disregarding the mandatory provisions of section 1203, Penal Code, which, after providing that probation may be summarily denied, continues: “ . . . if probation is not denied, the court must immediately refer the matter to the probation officer to investigate and to report to the court at a specified time, upon the circumstances surrounding the crime and concerning the defendant and his prior record. ... At such time or times fixed by the court, the court must hear and determine such application and in connection therewith must consider any report of the probation officer, and must make a statement that it has considered such report. ...” We are of the opinion, in view of these clear provisions, that while probation may be summarily denied, it is erroneous summarily to grant it.
 

 Usually a defendant granted probation, even irregularly, does not feel aggrieved and does not complain. But the defendants here do feel aggrieved and are complaining. They represented to the trial court, after he had taken the action complained of, that, if the matter were referred to the probation officer as required by law, it would be made to appear that all three of the defendants were seniors in one of the city’s high schools; that one was manager of the school’s football team, one of the others was president of the school’s student body and quarter-back on the team; and that none of the three had ever before been involved in any legal difficulty. This showing is mentioned not because we deem such a showing necessary in order to bring the requirement of the code—that the matter be referred to the probation officer—-into effect, but to illustrate in this ease the theory of the code section, that an enlightened judge is the better able to grant probation wisely than one who acts summarily.
 

 
 *Supp. 860
 
 We are of the opinion, however, that the replies of the trial judge, to the defendants’ statement that they desired to apply for probation and their formal motion to be permitted to file their applications, are most reasonably understood as a denial of probation. But if probation was not being granted, then the trial court had no authority to suspend a part of the sentence
 
 (Ex parte Howard,
 
 [1925] 72 Cal. App. 374 [237 Pac. 406], and cases cited), and tested on
 
 habeas corpus
 
 the suspension would be held a nullity and the sentences would be regarded as straight jail sentences of 180 days each.
 
 (In re Collins,
 
 [1908] 8 Cal. App. 367 [97 Pac. 188] ;
 
 In re Clark,
 
 [1925] 70 Cal. App. 643 [234 Pac. 109];
 
 In re Eyre,
 
 [1934] 1 Cal. App. (2d) 451 [36 Pac. (2d) 842].) The trial court did not intend, however, we must assume from its complete action, to require the defendants to serve 180 days in jail. They should, therefore, and in our opinion may have relief on appeal from the effects of the trial court’s misapprehension as to its power. (See
 
 People
 
 v.
 
 Mendosa,
 
 [1918] 178 Cal. 509 [173 Pac. 998].) The result of our judgment will be to grant relief to the defendants without prejudice to the rights of the people.
 

 DISCUSSION OF THE FAGAN CASE.
 

 As already noted, defendant Fagan was sentenced to serve 180 days on each of the four charges made against him, the sentences to run consecutively. Of the seeming severity of the sentences on the two counts charging that the defendant drove without a license, we cannot take account— it is not to be presumed that the trial court was taking advantage of these counts to inflict punishment, in addition to that authorized by law, for the offense of drunk driving—but we must take account of the fact that the third and fourth counts actually charge but one offense, although approached from different view-points. As two punishments may not be imposed for one offense, charged twice, the judgment on count IV should be reversed.
 
 (People
 
 v.
 
 Ryan,
 
 [1925] 74 Cal. App. 125,131 [239 Pac. 419];
 
 People
 
 v.
 
 Horowitz,
 
 [1933] 131 Cal. App. (Supp.) 791, 795 [19 Pac. (2d) 874], and see
 
 People
 
 v.
 
 Twedt,
 
 [1934] 1 Cal. (2d) 392, 398 [35 Pac. (2d) 324].) The same rule is applied where one act violates two separate statutory provisions, the ingredients of the offense under each provision being essentially the same, as they are
 
 *Supp. 861
 
 here.
 
 (State
 
 v.
 
 Masnik,
 
 [1939] 123 N. J. L. 335 [8 Atl. (2d) 701, 705] ;
 
 Weaver
 
 v.
 
 State,
 
 [1906] 74 Ohio St. 53 [77 N. E. 273, 275].)
 

 It is also argued that the offense stated in the second count (being drunk in a public place) consisted only in appearing drunk on a public street at the time of driving while under the influence of liquor, in which event there should be no judgment on count II because it is, in fact, included within count I, as is held in such cases as
 
 People
 
 v.
 
 Buchanan,
 
 [1929] 106 Cal. App. (Supp.) 765 [288 Pac. 50],
 
 People
 
 v.
 
 Twedt,
 
 [1934] 1 Cal. (2d) 392 [35 Pac. (2d) 324], and
 
 People
 
 v.
 
 Kynette,
 
 [1940] 15 Cal. (2d) 731 [104 Pac. (2d) 794] (but see
 
 People
 
 v.
 
 Burkhart,
 
 [1936] 5 Cal. (2d) 641 [55 Pac. (2d) 846]). The trial court, in considering the matter of probation on its merits, or the County Board of Parole Commissioners, if the problem is ever presented to it, should give due weight to the fact, if it be a fact, that the public appearance incident to count I was the only public appearance while drunk that falls within count II. Not having the facts before us, we cannot so determine; the acts covered by count I may, but do not necessarily, include the act charged in count II.
 

 Turning to the orders made after the imposition of the sentences, we find that the trial court has clothed them in the guise of probationary orders; the sentences are suspended for two years and “probation granted.” What has actually been ordered, of course, is the suspension of only two days of each 180 days sentence, and if we recognize this as the “act of grace and clemency” which the granting of probation is supposed to be
 
 (People
 
 v.
 
 Hairline,
 
 [1933] 219 Cal. 532, 534 [28 Pac. (2d) 16]), and not as an attempt to deprive the County Board of Parole Commissioners of the authority vested in it to grant parole, then we alone of all those charged with responsibilities in the matter, are blind to the true state of things. These “orders of probation, ’ ’ moreover, were made without a reference to and report from the probation officer, and for this reason, too, should be set aside.
 

 THE WORDING OF NOTICES OF APPEAL.
 

 The work of appellate courts is taken up to too great an extent with questions of procedure which would never arise
 
 *Supp. 862
 
 if counsel would take the slightest pains to ascertain and follow the plain directions of the codes. The notices of appeal in both these cases serve to illustrate our observation, although the notice of appeal in the Lopez ease is not so glaring an example.
 

 I. APPEALS IN LOPEZ CASE.
 

 In the Lopez case the three defendants gave notice that they and each of them appealed “from the order made denying the defendants;
 
 (sic)
 
 and each of them, requests for permission to file an application for probation, and from the judgment and sentence made and entered in the above-entitled case on the 28th day of September, 1940.” Section 1466, Penal Code, determines what appeals may be taken from municipal courts in criminal cases. It authorizes appeals by the defendant “ (a) From a final judgment of conviction. (b) From any order made after judgment affecting his substantial rights, (e) From an order denying a motion for a new trial. ’ ’ As the order the defendants have appealed from was made before judgment the appeal from it was unauthorized and must be dismissed.
 
 (People
 
 v.
 
 Jones,
 
 [1927] 87 Cal. App. 482, 495 [262 Pac. 361].) Instead of following the language of the code, by taking their appeal from the “final judgment of conviction,” the defendants appealed from the “judgment and sentence.” In at least twenty-four cases (beginning with
 
 People
 
 v.
 
 Dunlap,
 
 [1936] 12 Cal. App. (2d) 333 [55 Pac. (2d) 522], and continuing down to
 
 People
 
 v.
 
 Dutton,
 
 [1940] 41 Cal. App. (2d) 866 [107 Pac. (2d) 937]), appeals from “judgments” have been regarded as appeals from the final judgments of conviction, but appeals from “sentences” have been dismissed. These decisions were all written by the two divisions of the District Court of Appeal of this (the second) Appellate District (two of the cases being taken over by the Supreme Court, which made no change in the ruling). Deferentially, but for reasons about to be given, we are not dismissing the appeal from the sentence.
 

 II. APPEALS IN FAGAN CASE.
 

 Where an appeal is from the judgment and sentence, the appeal from the sentence may be dismissed without any prejudice to the appellant if, as has always been the case, the appellate court considers the appeal from the judgment
 
 *Supp. 863
 
 as unaffected by the dismissal of the appeal from the sentence and as presenting an appeal on its merits. But a different situation is presented where, as in the Fagan ease, the appeal is “irom the order and sentence of this Court heretofore made and entered on the 28th day of October, 1940. ’ ’ If the appeal from the sentence is dismissed, as the People argue that it should be, and as the procession of cases referred to would warrant (to which procession should be added
 
 People
 
 v.
 
 Sepulveda,
 
 [1940] 41 Cal. App. (2d) 98 [106 Pac. (2d) 18], where there was an appeal from the “sentence” but.not from the judgment), then the erroneous judgment will be left standing, and the defendant may have to serve an imprisonment of an additional 180 days, not because the law authorizes it, but because the trial court erred and the irregular notice of appeal leaves us helpless to right the wrong. We are not willing ourselves to act without legal authority in order to correct a similar act, but neither are we willing to let a prejudicial error survive if there is a legitimate way open to us' to correct it.
 

 III. AN APPEAL LIES FROM A “SENTENCE”.
 

 Although our decisions in such eases as these are not ordinarily reviewable by any of the higher courts of the state, nevertheless, because we recognize the desirability of uniformity of decision and realize that that is to be obtained by our following the paths marked by our courts of greater wisdom, our practice is not to deviate from the course they have indicated, even though we would have preferred another. We are persuaded that we should make a detour in the present instance, however, because, we respectfully submit, the trail marked by the decisions referred to was neither surveyed nor adopted with deliberation, is not justified by either authority or logic, but is contrary to both, and may, as in the instant case, lead to a door closed to all effort to correct a harmful error. We are further persuaded to depart from precedent in this case because the problem is one of our jurisdiction on appeal, and so it lies within the power of the courts whose decisions we are declining to follow to set our judgments aside, if, after weighing the matter, they are of the opinion that we are without jurisdiction.
 

 So far as we have been able to find, the first case in which an appeal from a “sentence” was dismissed, was, as already
 
 *Supp. 864
 
 stated,
 
 People
 
 v.
 
 Dunlap,
 
 [1936] 12 Cal. App. (2d) 333, 336 [55 Pac. (2d) 522]. It appears from the opinion that the defendant had appealed from an order denying him a new trial, from the judgment, the verdict and sentence. The question of the appeal from the sentence is disposed of as follows: “Since no appeal lies from either ‘the verdict’ or ‘the sentence ’ the attempted appeal therefrom is dismissed.” No authority was cited and no consideration whatever was given to the possible scope of the word “sentence.” This first decision has been succeeded, as already noted, by twenty-four eases, in each of which an appeal from a “sentence” was dismissed, but in not one of them was there a case cited, other than one or more of the twenty-five, and in not one of them was there any consideration given to the possible meaning of “sentence.” Without discussion, the word “judgment” was assumed to mean “final judgment of conviction”; without comment, the word “sentence” was assumed to mean something from which an appeal was unauthorized just because that particular word did not appear in the code provisions concerning appeals.
 

 Because of the respect we entertain for the learned justices to whose decisions we have just been referring, we make bold to state our confidence that, when they do consider what a “sentence” is, they will conclude that an appeal from it will lie. An appeal lies from a “sentence” in a criminal case, because it lies from the final judgment of conviction; the two terms are synonymous. “A sentence is the judgment of the court before which the trial in a criminal case is had, formally declaring to the accused the legal consequences of the guilt. . . . Briefly, it is the judgment against the accused.” (16 C. J. 1265, 1266; 24 C. J. S., Crim. Law, see. 1556.) The law dictionaries define “sentence” as follows: “A judgment of conviction in a criminal case; it is the appropriate word to denote the action of the court before which the trial .is had, declaring the consequences to the convict of the fact thus ascertained.” (Ballentine [1930] Law Dictionary.) “The judgment formally pronounced by the court or judge upon a defendant after his conviction in a criminal prosecution, awarding the punishment to be inflicted. The word is properly confined to this meaning.” (Black’s Law Dictionary, 3d ed.) “In the common law, sentence is exclusively used to denote the judgment in
 
 criminal
 
 eases. (4
 
 *Supp. 865
 
 Bl. Comm. 376.) ” (Burrill’s Law Dictionary [1851].) “A judgment, or judicial declaration made by a judge in a cause. The term judgment is more usually applied to civil, and sentence to criminal, proceedings.” (Bouvier’s Law Dictionary [Rawle’s 3d Rev. ].) Webster’s New International Dictionary joins the chorus with this definition of “sentence”: “2. A decision or judgment pronounced by a court. ... 9. Law. In its broadest sense, a judicial determination, judgment, or decree; ... b. In criminal and ecclesiastical courts, a judgment passed by a court or judge on a person on trial as a criminal or offender; as commonly used, the order by which the court imposes punishment or penalty upon a person found guilty, or the punishment or penalty so imposed.” For a multitude of decisions to the same conclusion see 1 ‘ Sentence ’ ’ in Words and Phrases. (See also
 
 Ex parte Shrader,
 
 [1867] 33 Cal. 279, 283.)
 

 There is nothing in the codes or decisions of California (other than the twenty-five cases which have caused us to stop, look and listen) that require or suggest that the word is used with a different meaning in this state. Section 1191, Penal Code, places limits upon the time to be fixed for “pronouncing judgment,” but provides that in case the court entertains a doubt as to the defendant’s sanity, “the time for pronouncing sentence” may be extended. Section 1203.1, Penal Code, provides: “The court, judge or justice thereof, in the order granting probation, may suspend the imposing, or the execution of the sentence ...” In section 1203.2, Penal Code, we find: “ . . . the court may, if the sentence has been suspended, pronounce judgment . . . but if the judgment has been pronounced and the execution thereof suspended, the court may revoke such suspension.” Again in section 1203.3, Penal Code, we note the expression: “. . . if the court has not seen fit to revoke the order of probation and impose sentence or pronounce judgment ...” Section 1445, Penal Code, made applicable to the municipal court by section 1461a of the same code, provides: “When the defendant pleads guilty, or is convicted, . . . the court must render judgment thereon of fine or imprisonment, or both, as the ease may be. ’ ’
 

 Many more illustrations from the code sections could be given; we add a few found in the opinions of our appellate courts. In
 
 People
 
 v.
 
 Stokes,
 
 [1907] 5 Cal. App. 205, 214 [89
 
 *Supp. 866
 
 Pac. 997], the court argued: “Pronouncing judgment, which is the formal declaration of sentence, is not the trial, nor any part thereof.” In
 
 Ex parte Robbins,
 
 [1915] 27 Cal. App. 677 [151 Pac. 14], the court, speaking of a defendant convicted in a justice’s court, stated (p. 679), “He now insists that the judgment of sentence is null and void.” Later (p. 682) the court referred to the “rendition of judgment of sentence.” From the opinion in
 
 People
 
 v.
 
 Ryan,
 
 [1925] 74 Cal. App. 125 [239 Pac. 419], a case involving at least thirty-one counts, we quote (p. 132): “The court below pronounced a separate sentence on each count under which the defendant was convicted, and provided that the sentences run consecutively. Appellant has treated these separate sentences as constituting, which they do, in substance a single judgment, and has appealed ‘from the final judgment of conviction’ in the action.” From
 
 In re Phillips,
 
 [1941] 17 Cal. (2d) 55 [109 Pac. (2d) 344], we quote (p. 58) : “In the former situation, however, where the court suspends the imposition of the sentence, that is, the rendition of a judgment of conviction, there is no judgment from which the defendant can prosecute an appeal. ...”
 

 In the following eases the opinions refer one or more times to the final judgment of conviction as the “judgment and sentence”:
 
 People
 
 v.
 
 Hartman,
 
 [1913] 23 Cal. App. 72, 76 [137 Pac. 611];
 
 In re Bateman,
 
 [1928] 94 Cal. App. 639, 640 [271 Pac. 757];
 
 People
 
 v.
 
 Tedesoo,
 
 [1934] 1 Cal. (2d) 211, 213 [34 Pac. (2d) 467] (“judgment of conviction and sentence”);
 
 People
 
 v.
 
 Bermijo,
 
 [1935] 2 Cal. (2d) 270, 272 [40 Pac. (2d) 823];
 
 People
 
 v.
 
 Wallach,
 
 [1935] 8 Cal. App. (2d) 129, 133 [47 Pac. (2d) 1071];
 
 People
 
 v.
 
 Smith,
 
 [1939] 36 Cal. App. (2d) 361, 362 [97 Pac. (2d) 867]; and
 
 People
 
 v.
 
 Kynette,
 
 [1940] 15 Cal. (2d) 731, 737, 762 [104 Pac. (2d) 794]. (In the opinion in the last case “judgment” and “sentence” are frequently used interchangeably.)
 

 It would seem to be demonstrated beyond question that “judgment” and “sentence” are regarded as synonymous terms, in the vocabulary of the criminal law, both elsewhere and in the legal literature of this state. Therefore, the trial court did not misdescribe the judgment it rendered when in the statement on appeal in the Fagan case it declared: “The Court thereupon immediately pronounced sentence, as follows.” Nor did the defendant fail to appeal
 
 *Supp. 867
 
 from the final judgment of conviction because he referred to it as the “sentence.”
 

 But if a distinction may legitimately be made between “judgment” and “sentence,” it does not follow that an appeal from a sentence should be dismissed. In
 
 People
 
 v.
 
 Bryant,
 
 [1929] 207 Cal. 450 [278 Pac. 1025], our Supreme Court stated (p. 452): “It is the policy of this court, of course, to hear appeals upon the merits and to avoid, if possible, all forfeiture of substantial rights upon technicalities, ’ ’ and in
 
 People
 
 v.
 
 Appellate Department,
 
 [1936] 8 Cal. (2d) 56, 60 [63 Pac. (2d) 812], the Supreme Court recognized, as we do, that the same policy governs this court. [13] Notices of appeal should not be construed more strictly in criminal cases than they are in civil cases, where the rule is that “notices of appeal are liberally construed to preserve the right of review unless it appears that the respondent has been misled by the misdescription.”
 
 (Kellett
 
 v. Marvel, [1936] 6 Cal. (2d) 464, 471 [58 Pac. (2d) 649] ; and see cases cited in 2 Cal. Jur. 316-319, including
 
 Kimple
 
 v.
 
 Conway,
 
 [1886] 69 Cal. 71 [10 Pac. 189], where an appeal from an order “overruling and denying plaintiff’s motion to set aside said judgment . . . and for granting a rehearing therein” was recognized as an appeal from an order denying plaintiff a new trial.) Any meaning that “sentence’ can with any reason be said to bear in either notice of appeal before us, is so nearly akin to that which must be ascribed to “final judgment of conviction” that the appeal from the “judgment and sentence” in the Lopez case and the “sentence” in the Fagan case should be given effect as applying to their respective final judgments of conviction. To give to “sentence” a meaning (or lack of meaning) that requires the dismissal of the appeal, is not an observance of the policy pronounced by the Supreme Court,
 
 supra,
 
 “to hear appeals upon the merits. ’ ’
 

 The People further question the sufficiency of the notice of appeal in the Fagan case because it is from “the order and sentence,” whereas there were four counts, as to each of which there was an order and a sentence. As we have already noted, these four judgments are introduced in the statement on appeal with the words: “The Court thereupon immediately pronounced sentence, as follows.” The point is further disposed of by
 
 People
 
 v.
 
 Ryan, supra,
 
 74 Cal.
 
 *Supp. 868
 
 App. 125, where, as the court observed (p. 132) : “The court below pronounced a separate sentence on each count under which the defendant was convicted, and provided that the sentences run consecutively. Appellant has treated these separate sentences as constituting, which they do in substance, a single judgment, and has appealed ‘from the final judgment of conviction’.” The appellate court proceeded to strike from the judgment the sentences based on certain counts, affirming the others.
 

 We therefore, in the Lopez case, dismiss the appeal from the order denying the defendants’ motion; we reverse the judgment and sentence with directions to the trial court to rearraign the defendants for judgment, not overlooking the possibility of probation.
 
 (Ex parte Maguth,
 
 [1930] 103 Cal. App. 572 [284 Pac. 940].) In the Fagan case, we affirm the judgment as to counts I, II and III; we reverse the judgment as to the fourth count, with directions to the trial court to dismiss the fourth count; we reverse the orders purporting to grant probation, with directions to take any further steps respecting probation in accordance with the law.
 

 Shaw, P. J., and Fox, J., concurred.