105 Cal.App.2d Supp. 851 (1951)
THE PEOPLE, Respondent,
v.
PETER SAAD, Appellant.
California Court of Appeals. 
Aug. 8, 1951.
 J. T. Forno for Appellant.
 S. Ernest Roll, District Attorney, Jere J. Sullivan and Ralph Bagley, Deputy District Attorneys, for Respondent.
 THE COURT.
 On the same day that he was sentenced to serve 10 days in the county jail and to pay a fine of $300, the defendant, appearing in propria persona, filed a notice that he appealed "from the verdict and conviction and from the denial of defendant's motion for a new trial made this 23d day of April, 1951." [1] There is, of course, no appeal from the verdict. (See Pen. Code, 1466, which lists the judgments and orders from which defendants may appeal in criminal cases in the inferior courts and does not include the verdict, and People v. Ormes (1948), 88 Cal.App.2d 353, 354 [198 P.2d 690, 691], which gives the same effect to identical language appearing in section 1237 in relation to appeals from superior courts.) [2] Nor does section 1466, Penal Code, include in the list a "conviction." Provision is made, however, for an appeal from the "judgment of conviction." It is not farfetched to conclude that by "conviction" in his notice of appeal, the defendant meant to point to the "judgment of [105 Cal.App.2d Supp. 853] conviction." As we said in People v. Lopez (1941), 43 Cal.App.2d Supp. 854, 867 [110 P.2d 140, 147], where we held an appeal from a "sentence" to be an appeal from a "judgment of conviction": "Notices of appeal should not be construed more strictly in criminal cases than they are in civil cases, where the rule is that 'notices of appeal are liberally construed to preserve the right to review unless it appears that the respondent has been misled by the misdescription.' " Not only does it not appear that the respondent has been misled, in this case, but we find counsel for the People magnanimously supplying these cases in support of the thesis that we should interpret the notice of appeal as being one from the judgment of conviction: People v. Yates (1931), 114 Cal.App. Supp. 782, 790 [298 P. 961, 964]; People v. Hawthorne (1944), 63 Cal.App.2d 262, 264 [146 P.2d 517, 518]; People v. Aresen (1949), 91 Cal.App.2d 26, 28 [204 P.2d 389, 390, 957]; Holden v. California Emp. Stab. Com. (1950), 101 Cal.App.2d 427, 430-431 [225 P.2d 634, 636]. We so interpret it.
 [3] On such an appeal we may, of course, consider whether or not the complaint, upon which the conviction is based, states a public offense. It seems plain to us that no public offense was stated, in this case, for the charge is limited to those provisions of section 337.5, Penal Code, which are void because, in their uncertainty, they violate the due process provision of the Fourteenth Amendment.
 [4] Section 337.5 reads as follows: "Any person who has been convicted of touting, and the record of whose conviction on such charges is on file in the office of the California Horse Racing Board or in the Criminal Record Bureau of the State or of the Federal Bureau of Investigation, or any person who has been ejected from any race track of this or any other State for touting or practices inimical to the public interest shall be excluded from all race tracks in this State. Any such person who refuses to leave such track when ordered to do so by inspectors of the California Horse Racing Board, or by any peace officer, or by an accredited attache of a race track or association is guilty of a misdemeanor." [Emphasis added.] Of the defendant it was charged that he refused to leave Santa Anita Race Track when told to do so by an accredited attache, he being known to have been ejected from this and other race tracks in California, said ejections "having been for practices inimical to the public interest." It was not alleged that he had been convicted of touting or that he had ever been ejected for touting. [105 Cal.App.2d Supp. 854]
 The words we have italicized are, obviously, the crux of the charge. It is not a misdemeanor for everyone told to do so to refuse to leave a race track, but only those offend who have heretofore been ejected and only then if the ejectment was because of practices inimical to the public interest. The words italicized are an essential element of the particular crime the Legislature attempted to create and of which the complaint attempted to charge the defendant. But those words are too indefinite in their import to serve in a definition of criminal conduct.
 [5] As stated in Lanzetta v. New Jersey (1938), 306 U.S. 451, 453 [59 S.Ct. 618, 83 L.Ed. 888, 891]: "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. The applicable rule is stated in Connally v. General Constr. Co., 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322, 328]: 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' "
 The principle was applied in In re Peppers (1922), 189 Cal. 682, 685-688 [209 P. 896], where condemnation fell upon this expression: "oranges shall be considered unfit for shipment when frosted to the extent of endangering the reputation of the citrus industry, if shipped." See also Orloff v. Los Angeles Turf Club (1951), 36 Cal.2d 734, 739-740 [227 P.2d 449, 453], and cases cited, where the word "immoral" was the indefinite touchstone.
 We deem it unnecessary to bolster with argument our conclusion that there is no ascertainable standard of guilt in "practices inimical to the public interest." It takes no vivid imagination to conjure up the puzzles that an attempt to apply the words might raise, puzzles to the solution of which the Legislature has not provided a single direction or hint.
 For the reasons given, the appeal from the verdict is dismissed, as is also the appeal from the order denying a new trial, which becomes moot as we reverse the judgment with directions to the trial court to dismiss the action.