[Crim. No. 1830. First Appellate District, Division Two.—February 25, 1935.]

THE PEOPLE, Respondent, v. FRANK KING et al., Defendants; LAWRENCE J. CARMODY, Appellant.

Paul Charles Dana for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

SPENCE, J.—The defendant Lawrence J. Carmody and one Frank King were jointly charged with burglary. King entered a plea of guilty, while Carmody entered a plea of not guilty. Upon a trial by jury Carmody was found guilty of burglary of the second degree, and he appeals from the judgment of conviction and the order denying his motion for new trial.

The charge set forth in the information involved the burglary of the apartment of Mrs. V. R. Velsir at 2626 Ashby Avenue, Berkeley, shortly before noon on August 2, 1933. Carmody and King were arrested in San Francisco at about 5:30 P. M. of the same day after King had pawned or sold to one Zwillinger a diamond ring of the complaining witness which had been stolen from her apartment. The two men were separately questioned regarding several burglaries. On August 4, 1933, Carmody was told that King had made a statement to the effect that the two men had gone to Berkeley together on August 2d; that Carmody had entered the apartment of the complaining witness and taken her diamond ring therefrom after the complaining witness had gone upstairs with King to show him a vacant apartment; that Carmody had turned the ring over to King on the boat returning to San Francisco and that King had sold the ring to a dealer named Zwillinger for $25 and divided the proceeds with Carmody. To this statement Carmody replied, ''I have nothing to say, you will have to see my attorney.'' A few days later Carmody consented to paying and did contribute $12.50 out of the money taken from him at the time of arrest toward repaying Zwillinger the $25 which had been paid by Zwillinger to King for said ring. The remaining $12.50 was contributed by King out of the money taken from him at the time of arrest. It should be stated that each of the men had more than $25 on his person when taken into custody. Carmody said, ''I will stand my share of the $25

the ring was pawned for.'' The two men were charged in San Francisco with the burglary of an apartment house in that city. They entered pleas of guilty to that charge and each was sentenced to a year in the county jail. After completing their sentences, they were taken to Alameda County to face the charge herein.

On the trial no direct evidence was produced to show that defendant Carmody had entered the apartment of the complaining witness. While King had been in said apartment, he was at all times in the immediate presence of the complaining witness. In order to connect defendant Carmody with the commission of the offense, the prosecution relied in part upon showing said defendant's actions following his arrest as above set forth. They further relied upon evidence tending to show the plan or scheme under which Carmody and King operated. This latter evidence was admitted over the objection of defendant Carmody.

The prosecution showed that in April, 1933, the apartment of Mrs. Fechter in the city of Berkeley had been burglarized. She, like the complaining witness, was the manager of the apartment house in which she resided. King called at about 11:15 A. M. and asked to see an apartment. Mrs. Fechter took him to one of the apartments facing the street and King immediately raised the shade and looked down into the street. He then engaged her in a lengthy conversation regarding the various features of the apartment and finally concluded by stating that he would bring his wife to see the apartment in the afternoon. Mrs. Fechter had left the back door of her own apartment unlocked and had left a diamond ring and some money in said apartment. Shortly after King's departure she discovered that said ring and $20 in currency had been stolen from her apartment. She later had a conversation with Carmody and King at the police station. King told her he was sorry and that he would hate to have his mother know he was in trouble. She asked Carmody many questions, but he would not talk, stating only that he knew nothing about the ring. Thereafter a police inspector conversed with Carmody and showed him a police report regarding the theft of this ring. Carmody read the report which stated in part, ''One man looks at apt. while confederate sneaks into manager's unlocked apt. and takes money and jewelry''. Thereupon Carmody stated that

if he was let out of the city prison for a day or two, he would be able to recover and return that ring. He stated that he had sold that ring to a man for $190. He further stated that he did not know the man's name but he did give a description of him.

Evidence was also admitted regarding certain events which happened on the morning of August 2, 1933, very shortly before King arrived at the apartment house managed by the complaining witness. This evidence tended to show an attempt by Carmody and King to burglarize the apartment of Mrs. Presher, who managed an apartment house at 2217 Walnut Street in the City of Berkeley. King went to said apartment house at about 11 A. M. of that day and Mrs. Presher took him upstairs to show him a vacant apartment. While Mrs. Presher was so engaged, Carmody was seen by Mr. Presher at the front entrance where the buzzers were located. Thereafter he saw Carmody enter the rear entrance of the apartments. Mr. Presher entered the apartment house and next saw Carmody in the hall backing away from the door of the Presher apartment. Mr. Presher asked him what he wanted and Carmody said he was looking for his friend. Upon being asked his name Carmody gave the name of Conway. Mr. Presher then took Carmody upstairs to find his friend and upon meeting Mrs. Presher and King in an upstairs apartment, Carmody and King greeted each other, told the Preshers they were in a hurry and then departed, saying they would be back that afternoon.

Appellant contends that the evidence was insufficient to sustain his conviction and that the trial court committed prejudicial error in admitting evidence concerning the Fechter and Presher incidents. We find no merit in either of said contentions. As to the first point, we believe that the foregoing recital of the evidence is a sufficient answer to the contention. It is conceded that a burglary was committed and that King was involved therein. The only rational conclusion to be drawn from the evidence is that King did not personally take the ring of the complaining witness, but that he operated with a confederate. The real question is whether appellant was the confederate and we believe that there was ample evidence to show that he was.

As to the second point, we are of the opinion that the evidence of the Fechter and Presher incidents was properly

admitted. While such evidence tended to show the commission of other crimes, it was nevertheless admitted to show the plan, scheme or system used by Carmody and King for the purpose of burglarizing the apartments of apartment house managers. There is ample authority for the admission of such testimony. (*People* v. *McGill*, 82 Cal. App. 98 [255 Pac. 261]; *People* v. *King*, 122 Cal. App. 50 [10 Pac. (2d) 89]; *People* v. *Cosby*, 137 Cal. App. 332 [31 Pac. (2d) 218]; 8 Cal. Jur., p. 69, sec. 173.)

The judgment and order denying the motion for new trial are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 12, 1935.