[Crim. No. 3945. Second Dist., Div. One. Mar. 11, 1946.]

THE PEOPLE, Respondent, v. JEAN JOHNSTON,
Appellant.

David Silverton for Appellant.

Robert W. Kenny, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

YORK, P. J.—This is an appeal by defendant Jean Johnston from "the order denying her motion for a new trial and from the judgment of conviction and sentence rendered against her."

By an information appellant and her codefendant DuBrowa were jointly charged with a violation of section 11160 of the

Health and Safety Code, i. e., the unlawful possession of marijuana and opium. A jury trial was waived and by stipulation the case for the prosecution was submitted upon the transcript of the preliminary examination which was read into the record. At the conclusion of the trial, the court found appellant guilty, as charged in the information, and found defendant DuBrowa not guilty. Appellant's application for probation and her motion for a new trial having been denied, she was sentenced to the Los Angeles County Jail for a term of six months.

It appears from the record herein that appellant and defendant DuBrowa resided together and were employed in the late evening hours until around midnight; that on March 7, 1945, accompanied by Seymour Handel, they returned to their home around three o'clock in the morning, at which time Officers Mott, Pena, Stark and Russell, of the Los Angeles City Police Department attached to the Narcotic Detail, were "staked out" close to the house where the two women resided. Officer Mott testified that he saw appellant, defendant Du-Browa and Handel as they approached the house at the time in question, and observed appellant "leave the sidewalk and go across the weeds which are adjoining the driveway to an area alongside of the garage. Against the garage there is a hedge or group of shrubs, and I observed the defendant Johnston stop near the shrubs, lean over and with her right hand reach down into the shrubbery. She stood erect and she had what appeared to be a small object in her right hand. She then returned to the sidewalk to where the defendant Du-Browa and this Seymour Handel were waiting. She rejoined them and went into the house at 6511 Romaine. . . . I stood at the kitchen window just immediately after they went onto the porch and I observed them come into the living room of this house. . . . I went over to that spot where she went to and reached down and made a thorough search of that portion of the hedge to see if I could find any objects at all that she might have deposited or left there. . . . Q. Did you discover anything? A. I made a thorough search with my flashlight, and, as I recall, there was a child's woolen mitten and two or three pieces of wood other than the leaves that were around from the hedge. Q. That is, you saw them there? A. Yes, sir. Q. Did you take any out? A. No, I left things just as they were. I made a close inspection of what was there. . . . Q. By Mr. Safier: What did you do then after

you completed your search? A. I went back to my post there at the kitchen window. . . . I stood at that window for approximately, oh, I would say 15 or 20 minutes, and at the end of that time the defendant Johnston came out of the front door and went out onto the walk across the driveway to this same location where she had gone to before in the shrubbery. I observed her reach down with her right hand again and go through the motions of depositing something in the shrubbery. . . . She then rose and went back into the house. I immediately went over to this location beside the garage and made an examination of the shrubbery and observed this bottle wedged against the side of the garage about a foot and a half off the ground. Q. By Mr. Danoff: Was there anything in the bottle? A. There were four cigarettes which appeared to be marijuana." After marking the cigarettes, said witness left the bottle in the shrubbery and together with Officer Pena, Sergeants Stark and Russell, entered the front door of the house. Continuing, said witness testified: "As we entered . . . I observed . . . Seymour Handel make a motion toward a small coffee table near the center of the room, either through the motion of placing something in a little flower pot or throwing something to the floor. . . . Before we opened the door, through the Venetian blinds, a small crack in the blind, I observed him by looking through that. . . . When we entered, the defendant DuBrowa was seated near a stove in the front room . . . and the defendant Johnston, I believe, was in the bedroom or coming from the doorway of this bedroom; we also found a party by the name of Charles Krakowe in the front room and he was seated on the davenport. . . . We then made a search of the house and I observed Sergeant Stark come out from the direction of the bathroom and display this silver spoon which contains a brown substance. . . . In making a thorough search of the front room I observed a quantity of material on the floor in the vicinity of the area that I observed Mr. Handel make the motion, and I observed a quantity of flakes that appeared to be marijuana on the floor. . . . I picked up some of the larger flakes. There were quite a few smaller flakes that had sifted or settled into the nap of the rug. I got a few of the larger ones and placed it in a piece of paper and folded it up into a package." Thereafter, in the presence of defendant DuBrowa and the others in the room, said witness questioned appellant with respect to the bottle containing the cigarettes,

to wit: "I told defendant Johnston that I observed her place an object near the garage, and after she had returned into the house I told her, I went to that location and observed a small green bottle containing four cigarettes and I asked her if she wanted to go out with me to remove the bottle. She stated she didn't know anything about it, and did not want to have anything to do with it. I then went outside and recovered the bottle, People's Exhibit A, and brought it inside and displayed it to her and she said she didn't know anything about it. I displayed it to the defendant DuBrowa and she also denied any knowledge of it. I then displayed the debris that we took from the rug and I told her it appeared to be seed and flakes of marijuana, and she said, 'I don't know anything about it.' "

Officer Pena testified that on March 7, 1945, at approximately 3 a. m., he was standing in the rear of the house at 6511 Romaine "looking in the bathroom window" and observed the defendant DuBrowa in the process of washing her hair; that "as she was drying it, I observed the defendant Johnston come to the door and ask Miss DuBrowa some question and I heard Miss DuBrowa ask her in turn, 'How many sticks are there left?' to which defendant Johnston answered, 'There are four.' The defendant DuBrowa said, 'Put them in the bottle and take it outside.' And at that time the defendant Johnston walked down the hall and disappeared and the defendant DuBrowa continued drying her hair."

Mr. J. A. Allen, a member of the Los Angeles Police Department and attached to the Scientific Investigation Bureau as a chemist, testified that he had made a microscopic examination of the four cigarettes contained in the green jar (People's Exhibit A) and was of the opinion that the "contents of the four cigarettes were the leaves and flower tops of cannabis sativa, which is more commonly known as marijuana or Indian hemp." This witness' attention was then directed to People's Exhibit B, "which is an envelope and a spoon, the spoon having some black substance adhering to it and a piece of cotton." With respect to this, the witness testified that he had made a chemical examination of the black material in the spoon and "it is my opinion that the residue material in this spoon is opium."

Appellant denied that she left DuBrowa and Handel on the sidewalk and went to the hedge when they were on their way home on the night in question, and denied that she and

DuBrowa had any conversation in the bathroom concerning "sticks." She also denied that she had left the house that night after the three of them had gone in. She testified that she did not use narcotics in any form and had never had in her possession a cigarette or paper similar to those in the green bottle. Defendant DuBrowa testified that up until about ten days prior to the date of appellant's arrest, Bob and Ruth Greenberg had boarded and lived in the house at 6511 Romaine Street with her and appellant; and that one evening they discovered opium in the room occupied by the Greenbergs.

 It is here urged by appellant that the evidence is insufficient to sustain the judgment for the reason that it is not shown that she had possession of the narcotics, nor that she had knowledge that the substance found in her house was marijuana and opium.

As was stated by this court in *People* v. *Bassett*, 68 Cal.App.2d 241, 247 [156 P.2d 457] : . " 'Possession' of a chattel is established when it is shown that a person has physical control thereof with the intent to exercise such control, or having had such physical control, has not abandoned it and no other person has that possession. (Rest., Torts, § 216.) The statute does not require 'proof of possession' at the very time of arrest (*People* v. *Belli*, 127 Cal.App. 269, 271 [15 P.2d 809]), nor is it necessary to prove that the accused had the unlawful article on his person (*People* v. *Sinclair*, 129 Cal.App. 320, 322 [19 P.2d 23]). The question therefore arises, does the evidence in the case before us establish the fact that 'possession' of the narcotics was immediate and exclusive and under the dominion and control of appellant."

In the instant cause, appellant denied participating in the events narrated by the police officers, hereinbefore recited; consequently the verity of the testimony thus adduced became a question for the determination of the trial court, and by finding appellant guilty, it impliedly accepted as true the testimony given by the police officers. Their testimony substantially supports an inference that appellant had the narcotics in her possession and also that she knew what they were.

 Appellant urges that the People's evidence should be wholly disregarded as being inherently improbable. In support of this contention she sets forth in her opening brief alleged inconsistencies in the testimony of Officers Mott and Pena.

"To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (Citing authorities.) Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758].)

██ Appellant finally urges that the court erred in denying her motion for a new trial and should have considered upon their merits the affidavits presented in support of the motion. Both the affidavit of appellant and that of DuBrowa are to the effect that the person who went toward the hedge, as testified to by Officer Mott, was their companion Handel; and that the reason they did not so testify at the trial was because they were not asked. Appellant's affidavit also avers that she was greatly in fear of Handel and was therefore afraid to tell the officers that Handel went to the shrubbery; that Handel had threatened her and beaten her and that she was in great fear of him; further, that he had left Los Angeles before she could subpoena him.

Even though it be conceded that the evidence that it was Handel who went to the hedge was material, such evidence, so far as the instant cause is concerned, was only cumulative of appellant's testimony that she did not go to the hedge. Under the facts presented, the trial court did not abuse its discretion in impliedly determining that it was not Handel, who deposited the marijuana cigarettes in the hedge, and that it was not the duress of Handel which prevented appellant from so testifying at the trial, particularly in view of the statement of appellant's counsel made during the trial that Handel was then in New York.

The appeal from the sentence is dismissed. The judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.