[Crim. No. 820. Fourth Dist. Oct. 27, 1950.]

THE PEOPLE, Respondent, v. TONY CHAVEZ et al.,
Defendants; PETE MACIAS, Appellant.

Tom Okawara and Hugo Kazato for Appellant.

Fred N. Howser, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Four defendants, with Pete Macias, were charged with the crime of forcible rape. All were convicted by a jury. Macias appeals and seeks a reversal first, on the ground of insufficiency of the evidence to support the verdict.

 The one who claims to have had her person violated was a grandmother, and the mother of three children. She and her husband worked on a ranch picking cotton. Near there was a café where they went on January 6, 1950, after work and drank some beer, while awaiting the arrival of a bus to carry them home. These five defendants were in the café. Soon thereafter, the husband made arrangements with one of the defendants, for a consideration, for a ride to Firebaugh, due to the fact he was worried about his children at home. The complaining witness and her husband sat in the back seat with two of the defendants. The other three defendants sat in front. Defendant Macias was driving a 1937 Pontiac, light brown in color. The glass in the window of the rear door on the driver's side of the car was broken. The car carried a Washington license. The vehicle was driven to a distant warehouse. One defendant began making improper advances toward the complaining witness. The husband became angry and demanded that he and his wife be let out so they could walk. After a fracas the husband was pulled from the car and "beat up" by the two occupants of the front seat who were not driving. The complaining witness attempted to come to her husband's aid. The defendants grabbed her, pulled a cotton sack over her head, held her down and drove away, leaving the husband beside the road. The car came to a stop on a canal bank by the river. It was nighttime and the moon was shining brightly. Defendants grabbed the complaining witness, threw a pillow over her face, tore her clothing from her and each accomplished an act of sexual intercourse with her. Another attempted to commit an act of sodomy. She remembered that the three defendants who were seated in the front seat started committing the acts first. They then took turns holding her arms and legs. They threatened to kill her if she told. After throwing her clothes to her they drove away. She went to the nearest farmhouse. Officers were called

and she related the story and described the defendants, their car, the broken glass and the pillow. She described one of the defendants as wearing a khaki shirt with a torn shoulder. She described one as wearing a goatee. Defendant Pete Macias, when apprehended, was wearing such a goatee as described and was identified as the first man to violate her. The officers located a 1937 Pontiac, as described by the witness, in Firebaugh, parked in front of a furniture store. A pillow was found in it. It also had a broken glass as described by the witness and carried a Washington license plate. Tire marks, similar to the tires on the car, were discovered at the canal bank. The officers stopped two Mexican boys and asked them where the other three boys were and they stated they were around at different bars. The two Mexicans were then taken to the complaining witness's residence and identified by her as two of the offenders. Subsequently, the other three defendants were located. Chavez, who had the key to the car, told the officers where it was left. The complaining witness later identified this car from among several other cars present. After his arrest defendant Macias made a statement to the deputy district attorneys and it was reduced to writing. It recites that early that evening Macias was driving the car with the other four defendants in it, but that he let them out and picked up four other Mexican boys, bought some gas, and then went to the café and there met the complaining witness and her husband; that the husband offered to pay them for a ride to Firebaugh and that after proceeding with them the four other Mexican boys "beat up" the husband and that the four boys "ordered" him (Macias) to drive on; that he drove to the canal bank where each of them, including Macias, had sexual intercourse with the complaining witness; that the complaining witness had previously offered herself to them if they would pay her money; that when she found they had no money she refused and they went ahead and completed the acts; that he drove away, went back and met the original four Mexicans, the defendants in this case, and joined them. He did not say what became of the other four Mexicans who went with him. However, he stated he had seen them before on one or two occasions but did not know their names.

One defendant, who had been previously convicted of a felony, testified that he and the three defendants, other than Macias, went with Macias to the café, as related, but that they remained at the café until midnight; that Macias was gone about 15 or 20 minutes during that time to obtain some

gas for his car. However, on cross-examination he admitted that he and Macias had talked over the case in July and decided that Macias would say that four other boys had been with him and that Macias would take the blame, excusing the other four defendants, and gave as a reason that they knew they had not done anything and figured that the authorities would let the four boys go and then they could help Macias.

At the trial Macias testified that he went to the café with the four defendants in the described Pontiac; that he remained there until about 9 p. m. and went out for about 15 minutes to buy gas for his car and then returned and remained in the café, drinking beer, until about 11:30 p. m. and that when he saw his defendant friends were being picked up by the officers he took the car and parked it across the tracks; that he had never seen the complaining witness or her husband before the time he was picked up by the officers; that he recalled making a statement to the deputy district attorneys but the shorthand reporter's notes of that conversation were not true; that he had lied to the authorities; that defendants Chavez and Cota had told him that since he had no record and they did, he, Macias, should take the blame.

Another defendant, Estrella, when apprehended that night, was in bed with all his clothes on, including his shoes. He had put another shirt over his khaki shirt which had a tear in it over the shoulder, as described by the complaining witness. On the witness stand, that defendant testified that he was undressed when he went to bed; that he was fully dressed at the time of his arrest because he had arisen and dressed to go to work, but later found that it was too early so he returned to bed.

In addition to the positive identification of the defendants by both the complaining witness and her husband, there is considerable circumstantial evidence revealed in the record connecting the defendants with the crime. Suffice to say, a mere reading of the transcript would convince any reasonable jury of the guilt of this appealing defendant. Sufficient substantial evidence of defendant's guilt appears, and it supports the verdict. The judgment, therefore, must be upheld. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) This rule applies regardless of how much evidence there may have been to the contrary (*People* v. *Dant*, 68 Cal.App. 588, 591 [229 P. 983].)

■ Secondly, it is argued that since defendant Macias's statement to the deputy district attorneys, concededly properly admitted in evidence, did not amount to a confession, the court erred in giving an instruction to the effect that ''Evidence has been received in this case tending to show that on an occasion other than this trial one of the defendants, Pete Macias, himself made a statement tending to prove his guilt of the alleged crime for which he is on trial,'' and giving an instruction defining a voluntary confession in the general language of CALJIC forms No. 29 and 29A. It is claimed that the statement only amounted to an admission as defined in *People* v. *Ferdinand,* 194 Cal. 555, 558 [229 P. 341]; and *People* v. *Chan Chaun,* 41 Cal.App.2d 586 [107 P.2d 455]; that, accordingly, the instruction given on confession overemphasized the term ''confession,'' and led the jury to believe that the defendant had confessed to the crime of rape and accordingly such emphasis constituted prejudicial error.

It may be difficult to determine from the whole statement given by Macias whether it amounted to a confession or an admission. He did admit the act of sexual intercourse, claimed that the complaining witness offered such relationship for a price but on discovery that defendants had no money she refused and that they accomplished the acts anyway. The instruction, as given, was but a general instruction on the subject of voluntary confessions. The jury was properly told that it was a statement made by one who is a defendant in a criminal trial, at a time when he was not testifying in that trial, by which he acknowledged certain conduct of his own that constituted a crime for which he is on trial, a statement which, if true, discloses his guilt of that crime and excludes the possibility of a reasonable inference to the contrary. In addition, the jury was given an instruction explaining the evidentiary value of false statements and admissions. ■ Defendants offered no instruction clarifying the distinction between a confession and an admission and should not be heard now to complain for the first time on appeal. (*People* v. *Ahsbahs,* 77 Cal.App.2d 244 [175 P.2d 33].) Defendants themselves offered an instruction on the subject of confession which in effect would have told the jury that they should not consider a confession as evidence unless it was found to be voluntarily made. This instruction was refused as ''given in substance elsewhere.''

In *People* v. *Woods,* 35 Cal.2d 504 [218 P.2d 981], the

trial court, at the request of defendant, instructed the jury on the subject of admissions and confessions. The defendant later claimed that such instructions should not have been given because the evidence did not show a confession as distinguished from an admission. The court said that defendant having requested the court to give such instructions he is in no position to claim error on that ground.

In the instant case the jury could not have been misled by the giving of the general instructions on the definitions of confessions and admissions, particularly where it was left to the jury to determine whether such definitions were applicable, and where the jury might reasonably infer from the statements made that the defendant Macias did, in effect, confess the crime charged. Under the facts of this case no prejudicial error resulted.

Lastly, he contends that the trial court erred in denying his motion for a new trial based upon newly discovered evidence, which he claims he could not have presented at the trial and could not have discovered with due diligence prior to that time. The affidavit thus presented indicates that one Hernandez was the manager of the Della Santa Club; that he saw the complaining witness and her husband in that club on many occasions and that they were there on the date of the alleged offense; that he also saw four Mexican boys whom he had known for a long time and who were then living in Imperial Valley; that these boys stayed at the club until midnight, when the bar closed; that he was positive that he did not see the five boys whom the complaining witness identified as her attackers come into the café; and that he is positive that they were never present on that night.

It is argued that this defendant did not have knowledge of this witness nor of his testimony prior to the time of trial and accordingly he could not be charged with lack of due diligence in not having him present at that time. After a lengthy hearing, the court denied the motion for new trial.

The trial court's ruling on a motion for new trial is addressed to the sound discretion of that court. If there is a conflict in the evidence and the evidence believed by the trier of facts was sufficient to support the verdict, the ruling of the trial court will not be reversed unless the record demonstrates an abuse of discretion. The question of due diligence and whether or not the evidence was cumulative was fully sub-

mitted to the trial court for determination. No abuse of discretion appears in denying the motion. (*People* v. *Johnston,* 73 Cal.App.2d 488, 493 [166 P.2d 633]; *People* v. *Yankee,* 79 Cal.App.2d 431, 436 [179 P.2d 582].)

Judgment and order affirmed.

Barnard, P. J., concurred.