[Crim. No. 3557.   First Dist., Div. One.   Mar. 6, 1959.]

THE PEOPLE, Respondent, v. NEIL D. GALLAGHER, Appellant.

Arthur D. Klang for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney, and Jack Berman, Deputy District Attorney, for Respondent.

PETERS, P. J.—The defendant, a doctor, was convicted by a jury of illegal possession of a narcotic. From the judgment entered on that verdict and from the order denying his motion for a new trial, defendant appeals.

Appellant attacks the sufficiency of the evidence, and likewise contends that the court erroneously denied his motion to set aside the information on the ground that the evidence at the preliminary examination was insufficient to hold him to answer. The evidence at the preliminary and at the trial, in its essentials, was the same. It was ample to sustain the verdict and to justify the court in denying the motion.

The record shows that William Hebrank operates a pharmacy in San Francisco. The prescription room in that pharmacy is at the rear of the drug store. Hebrank keeps his narcotics in two drawers in that room. These drawers are locked at night but remain open during store hours. The pharmacy is customarily open six days a week from 10 a.m. to 9 p.m. In the morning hours and until 2 p.m. Hebrank is the only attendant in the pharmacy.

At all times here pertinent appellant, with his wife and small child, was living approximately across the street from the pharmacy in an upstairs apartment where he also had his office. Sometime in November, 1957, appellant introduced himself to Hebrank as a physician. Hebrank and the appellant became friendly, and appellant began coming to the pharmacy every morning shortly after 10 a.m. and visiting Hebrank for a half an hour to an hour and a half. Customarily Hebrank entertained the appellant in the prescription room. Occasionally Hebrank would leave the appellant alone in the prescription room while he, Hebrank, did some shopping in nearby stores.

Hebrank normally inventoried his narcotics every 30 days. On the regular inventory of November 30, 1957, he discovered that some of the narcotics were missing and unaccounted for. He reported his loss to the State Narcotics Department. That department sent Inspector Gazzola to investigate. Under Gazzola's directions Hebrank replenished his normal supply of narcotics. Thereafter, Hebrank made a daily inventory. He sold no narcotics between December 1st and December 11, 1957. Among his narcotics was a bottle containing 100 tablets of ½ grain Morphine Sulphate. In making his inventory on the afternoon of December 6, 1957, he discovered that there were 30 tablets missing from this bottle. Appellant had been in the pharmacy that morning and had been left alone in the prescription room while Hebrank did some shopping. This loss was reported to Gazzola. The inspector, on December 11, 1957, sprayed fluorescent powder, of a type invisible except under ultraviolet ray light, on the 70 tablets remaining in the

bottle, and on the bottle itself. This he did without touching the tablets or bottle with his hands. On the morning of December 12, 1957, shortly after 10 a.m., Gazzola and Hebrank, again without touching the tablets or bottle with their hands, counted the tablets and found there were still 70 in the bottle. Then Gazzola and another officer stationed themselves across the street from the pharmacy where they could see the entrance but could not see the prescription room. Shortly thereafter the appellant made his regular morning visit and sat down in the prescription room. Hebrank then left appellant there while he went to purchase some coffee in a nearby store. He was gone from three to seven minutes. During that time appellant was alone in the pharmacy. When Hebrank returned appellant was seated in the prescription room. Hebrank then made some coffee which he and appellant shared. Then appellant left the premises.

Inspector Gazzola reentered the pharmacy and he and Hebrank, again without touching the tablets or the container with their hands, counted the half grain morphine tablets. The count revealed that there were but 53 tablets remaining, that is, 17 had been removed since the count earlier that morning.

Gazzola and the other officer then proceeded across the street to appellant's residence. They rang the bell and the door was opened by the wife of appellant. Upon telling her that they had a personal matter to discuss with appellant, Mrs. Gallagher led the way upstairs toward appellant's apartment. When they reached the upper hall Gazzola saw appellant run from his bedroom and enter a bathroom on the other side of the hall. Gazzola and the officer tried to intercept appellant but appellant got into the bathroom and locked the door. The two officers were unable to force the door. While they were trying to do so Gazzola heard the toilet flush twice. Then the appellant unlocked the door and came out into the hall.*

The officers placed appellant under arrest. A cursory search of his pants pockets and a patting of his shirt pockets failed to disclose any narcotics. Then appellant was taken across the street to the pharmacy, where he was questioned by Gazzola. Appellant denied knowing anything about the missing tablets. Gazzola then tested the appellant's person and clothing with the ultraviolet ray device. The appellant's hands

---

*Appellant's wife contradicted this evidence. She testified that appellant was already in the bathroom when the officers arrived at the house.

produced a positive reaction, that is, glowed a lemon color, tending to indicate that the appellant had come into contact with the fluorescent powder that had been sprayed on the tablets and container. A positive reaction was also obtained from inside appellant's shirt pocket; later, traces of the fluorescent powder were found in the bathroom of appellant's house, on the toilet and on the floor around the base of the toilet. When Gazzola explained the fluorescent device to appellant, and what it apparently showed, appellant made no comment.

Appellant did not take the stand. His counsel, however, sought to show on the cross-examination of Gazzola that the traces of the powder might have come from the inspector's hands when he searched the appellant, but this was refuted by testimony that neither the inspector nor Hebrank had touched the tablets or the container.

One of the most seriously contested portions of the trial involved the introduction of evidence, over the vigorous objections of appellant, that in 1953 appellant had committed a similar offense in Ione, California. The prosecution was permitted to prove that in September, 1953, appellant had come into possession of narcotics under circumstances almost identical to those involved in the instant case. Appellant had been arrested in connection with that offense and admitted to the police that he had committed the charged offense, and returned to the police the narcotics involved.

On this evidence the jury found defendant guilty of the charged offense.

The evidence clearly supports the conviction. ▮ Appellant argues that while the evidence supports the inference of guilt, it also could support an inference of innocence. In reliance on the rule that circumstantial evidence must not only be consistent with guilt but inconsistent with innocence, it is argued that the verdict of guilty has deprived him of the "presumption of innocence." The contention is, of course, unsound. The fact, if it be assumed to be a fact, that the jury could have drawn the inference of innocence from the evidence, does not render the verdict erroneous where the jury has discarded that inference, and found in favor of guilt. If the evidence supports the inference that appellant was in unlawful possession of narcotics, and it certainly does that, the fact that such evidence might support a contrary finding is not sufficient to entitle the appellant to a reversal. (*People* v. *Bassett*, 68 Cal.App.2d 241 [156 P.2d 457]; *People* v. *Blinks,*

158 Cal.App.2d 264 [322 P.2d 466]; *People* v. *Ross,* 149 Cal. App.2d 287 [308 P.2d 37]; *People* v. *Dragoo,* 121 Cal.App.2d 322 [263 P.2d 90]; *People* v. *Torres,* 98 Cal.App.2d 189 [219 P.2d 480].)

Appellant makes much of the fact that no narcotics were discovered in his possession. Such is not an essential fact to sustain a conviction of a violation of section 11500 of the Health and Safety Code. (*People* v. *Belli,* 127 Cal.App. 269 [15 P.2d 809]; *People* v. *Blinks,* 158 Cal.App.2d 264 [322 P.2d 466]; *People* v. *McDaniel,* 154 Cal.App.2d 475 [316 P.2d 660]; *People* v. *Brickman,* 119 Cal.App.2d 253 [259 P.2d 917]; *People* v. *Newman,* 127 Cal.App.2d 430 [273 P.2d 917]; *People* v. *Noland,* 61 Cal.App.2d 364 [143 P.2d 86].) It is not essential that the narcotics be found on the person of the accused. (*People* v. *Sinclair,* 129 Cal.App. 320 [19 P.2d 23]; *People* v. *Johnston,* 73 Cal.App.2d 488 [166 P.2d 633]; *People* v. *Lunbeck,* 146 Cal.App.2d 539 [303 P.2d 1082].) The fact of unlawful possession, as well as the other facts essential to prove a conviction under section 11500, may be proved by circumstantial evidence. (*People* v. *Batwin,* 120 Cal.App. 2d 825 [262 P.2d 88]; *People* v. *Robarge,* 151 Cal.App.2d 660 [312 P.2d 70]; *People* v. *Rollins,* 161 Cal.App.2d 560 [326 P.2d 938].)

It is obvious that the circumstantial evidence here produced overwhelmingly supports the inference that appellant was in unlawful possession of a narcotic. Before he arrived at the pharmacy there were 70 morphine tablets in the bottle. After he had been left alone in the prescription room for three to seven minutes, there were only 53 tablets in the bottle. No one else was in the pharmacy during that three to seven minutes. The fluorescent powder on his hands and clothing demonstrated, almost to a certainty, that appellant had come into contact with the tablets and the container. The fluorescent powder in and about the toilet, and the evidence about the flushing of that facility, certainly supports the inference that when appellant saw the officers he got rid of the incriminating evidence by flushing it down the drain. Far from being weak or inconclusive, the evidence is well nigh conclusive. Inspector Gazzola is to be congratulated on a carefully planned and well executed job of police work.

The next contentions of appellant are that several errors were committed in admitting evidence of other crimes. Appellant urges that it was error to admit, over his objections, evidence tending to show that narcotics were missing

from the pharmacy on November 30, 1957, and December 6, 1957, and that appellant had visited the premises on those dates. This evidence was not introduced to show that appellant had taken the narcotics missing on those dates. The evidence that on November 30, 1957, narcotics were missing was obviously introduced to explain why, after that date, Hebrank took a daily inventory. The December 6, 1957, evidence was introduced to establish the number of morphine tablets that remained in the bottle on that date and the number that were in the bottle on the day of the charged crime, that is, December 12, 1957. The reason for the daily inventories and number of tablets in the bottle were essential elements in the prosecution's case. Thus, even if this evidence also tended to show that appellant had committed crimes on those dates, it was nevertheless admissible. ■ It is elementary that if proffered evidence tends logically and naturally to establish any fact that is part of the prosecution's case, it is admissible, even though it may also embrace evidence of another crime. (*People* v. *Lyon*, 135 Cal.App.2d 558 [288 P.2d 57].)

Appellant strenuously objects to the evidence that in 1953 he had committed a similar offense in Ione. This crime was committed under almost identical circumstances as the charged offense. The *modus operandi* in both cases was identical.

■ It is, of course, the general rule that a defendant should not be tried for any other offense than the one charged. (*People* v. *Albertson*, 23 Cal.2d 550 [147 P.2d 7] ; *People* v. *McCullough*, 158 Cal.App.2d 310 [322 P.2d 289].) ■ We agree that evidence of the commission of other offenses is never admissible merely to show that the accused has a criminal disposition or propensity or predilection toward crime. (*People* v. *Musumeci*, 133 Cal.App.2d 354 [284 P.2d 168].)

But the prohibition is not absolute. The exceptions to the rule are as well settled as the rule itself. ■ "Evidence of other crimes may be admitted when it tends directly to establish the crime charged by proving a material fact, where it is part of the res gestae, or where it helps to disclose motive, intent, premeditation, guilty knowledge, malice, or common plan or scheme." (*People* v. *Albertson*, 23 Cal.2d 550, 576 [147 P.2d 7] ; see also *People* v. *Dabb*, 32 Cal.2d 491, 500 [197 P.2d 1] ; *People* v. *Sykes*, 44 Cal.2d 166, 170 [280 P.2d 769].)

■ In the present case the evidence was admissible under the common plan or scheme exception. The Ione offense took place under almost identical circumstances with those

of the crime charged to appellant. Because of the similarity in the pattern or scheme employed in both offenses the prior offense was admissible under the rule announced in *People v. Peete*, 28 Cal.2d 306 [169 P.2d 924]. In that case defendant had been convicted in 1921 of murder. In 1944 she was again charged with murder. The first murder involved an unusual pattern or scheme by which the defendant sought to secure the victim's wealth by killing the victim, hiding the body and then forging the victim's name to various documents. The 1944 charged crime was committed under almost identical circumstances. The court, in holding such evidence admissible, stated (p. 317): "When a defendant's conduct in connection with the previous crime bears such similarity in significant respects to his conduct in connection with the crime charged as naturally to be explained as caused by a general plan, the similarity is not merely coincidental, but indicates that the conduct was directed by design." (See also *People v. Lisenba*, 14 Cal.2d 403 [94 P.2d 569]; *People v. Gosden*, 6 Cal.2d 14 [56 P.2d 211]; *People v. King*, 4 Cal. App.2d 727 [41 P.2d 593]; *People v. Lyon*, 135 Cal.App.2d 558 [288 P.2d 57].)

This rule, allowing evidence of other crimes where unusual and significant details of such crimes are so similar to the crime charged as to indicate a scheme or pattern upon the part of the defendant, is clearly applicable to the instant case. In both the Ione and the charged offense, the appellant had struck up a friendly relationship with a pharmacist; the latter had left the appellant alone in the store for short periods of time; narcotics were then discovered missing from the pharmacy. The appellant admitted to the police that he had committed the Ione offense.

In contending that such evidence was not admissible appellant places his main reliance on *People v. McCullough*, 158 Cal.App.2d 310 [322 P.2d 289], decided by this court in March of 1958. In that case the defendant was charged with the sale of narcotics on November 28, 1956. An officer testified that on the day in question he was dressed in civilian dress and was seated in his automobile with a named informer when defendant came up to the automobile; that the informer asked defendant if he had "anything"; that defendant replied that he had, but that the informer would have to get out of the car to get it; that the informer got out of the car and walked along the sidewalk; that the officer saw the in-

former hand the defendant a marked bill, and saw the defendant hand the informer two white packets containing narcotics.

Over objection, the prosecution was permitted to introduce evidence of another transaction that occurred on November 8, 1956. An officer was permitted to testify that on that day he saw defendant and a named informer in possession of marked bills enter an automobile in which another person was seated; that the informer got into the front seat with the driver, and appellant got into the back seat, alone; that the car was driven a short distance; that the informer got out and gave the police officer two packets containing heroin; that the informer no longer had the marked bills. The officers did not see the informer hand the money to the accused, nor did they see the accused hand anything to the informer.

This court properly held that evidence of the transaction of November 8, 1956, had been erroneously admitted. The court pointed out that there was no evidence that the accused had committed a criminal act that day. The court stated (p. 313): "No one testified that anything passed from the informer to appellant, or from appellant to the informer. The automobile did not belong to appellant. There were three men in the car, the informer, appellant and Hamilton. Who gave the informer the heroin or took his money does not directly or indirectly appear."

The court also held that there was no evidence of a common plan or scheme. At page 314 it was stated: "It did not show a common scheme or plan, except in the most general sense, because the methods of operation as to the charged offense and as to the November 8th transaction were quite different."

Obviously, the rule of this case is not here applicable. For reasons already stated, the challenged evidence was admissible.

The next contention of appellant is that the trial court erroneously refused to give a proffered instruction on petty theft, as a necessarily included lesser offense. At the trial appellant offered to prove that the narcotics involved were of a value not to exceed $20, pointing out to the court that he intended to offer an instruction on petty theft as an included offense. The offer of proof was denied and the court refused to give the proffered instruction. Of course, under section 1159 of the Penal Code, a defendant may be convicted of a necessarily included offense, and it is prejudicial error not to so instruct the jury. (*People* v. *Carmen*, 36 Cal. 2d 768 [228 P.2d 281]; *People* v. *Burns*, 88 Cal.App.2d 867

[200 P.2d 134].) Thus, in a murder case, where the evidence of the defendant tended to show that the charged offense was manslaughter, it was held to be prejudicial error not to instruct on manslaughter. (*People* v. *Carmen,* 36 Cal.2d 768 [228 P.2d 281].) But this rule only applies to necessarily included offenses, where the accused could be guilty of the charged offense, or of the included offense, but not of both. It does not apply to situations where the two offenses involved are separate and distinct. It is obvious that petty theft involves an element not at all involved in an unlawful possession of narcotics charge, i.e., the intent to steal. That intent, that element, is completely unrelated to the unlawful possession of narcotics charge. It is conceivable that a person could be convicted of both offenses, and that a conviction of one would not be a bar to a conviction of the other. This is not true of a necessarily included offense. (See *People* v. *Clenney,* 165 Cal.App.2d 241 [331 P.2d 696]; *In re Hess,* 45 Cal.2d 171 [288 P.2d 5]; *People* v. *Marshall,* 48 Cal.2d 394 [309 P.2d 456].) Appellant would define as a necessarily included offense any other offense shown by the evidence. Thus, when at oral argument, his counsel was asked if the evidence showed that a bank robber parked in a red zone, and then robbed the bank, speeding away at an unlawful speed, would the offenses of speeding and unlawful parking be a necessarily included offense in the charge of bank robbery, he answered that they would. It is obvious that these lesser crimes are not included offenses because they involve elements not involved in the charged offense. So it is with petty theft and unlawful possession of narcotics. The so-called lesser offense involves elements not involved in the charged offense, and so is not a necessarily included offense.

The contention is also made that the court erred in allowing in evidence, over objection, appellant's responses to accusatory statements. The arresting officer was permitted to testify that after arresting appellant he asked him what he had done with the narcotic tablets. Appellant denied taking them and denied being an addict. Appellant then stated in response to pertinent questions that while Hebrank was out of the store there was another customer present who came back to the prescription room. This was palpably false and contrary to all the other evidence in the case. When asked if he would submit to a visual examination for hypodermic marks appellant remained silent. The questioning officer

then made the ultraviolet ray test on appellant's person and clothing and explained what the tests disclosed and what the inferences from these disclosures were. Appellant kept silent, and finally stated that he did not know anything about it.

Of course, an accused's responses to accusatory statements are normally not admissible. (*People* v. *Staker,* 154 Cal. App.2d 773 [316 P.2d 725]; *People* v. *Teshara,* 134 Cal. 542 [66 P. 798].) But if such response constitutes an admission, then, as such, it may be admissible. ▇ The proper rule was thus stated in *People* v. *Davis,* 43 Cal.2d 661, 670 [276 P.2d 801]: "If the accused person expressly admits the truth of the accusatory statement, both the statement and answer may be admitted. ▇ If the accused person expressly denies the accusatory statement, there is no admission. ▇ If the accused makes an evasive or equivocal reply which is not directly responsive to the accusatory statement, or remains silent, it has been held that under certain circumstances both the accusatory statement and the response are admissible. ▇ In any event, when the accusatory statement is admitted, it is not admitted as proof of the facts asserted in the statement. Such statements are admitted only to show the reaction of the accused. (4 Wigmore on Evidence (3d ed. 1940), §§ 1071, 1072, pp. 70-89.)

▇ "When the response to an accusatory statement consists of evasion, equivocation or silence, 'It is for the court in the first instance to determine whether the import of the statements is such that it would furnish a foundation for proof of conduct, and it is then for the jury to decide whether the accused was aware the statements were made, whether, under all the circumstances shown, they called for a disclaimer whether the accused did reply to them, and whether if he did not do so, such failure showed criminal intent or consciousness of guilt.' "

▇ Thus while accusatory statements, if denied, may not be admitted, if the accused remains silent in the face of accusatory statements, or if he equivocates or lies about them, such may constitute an admission and become admissible. That is this case. While appellant denied some of the accusations, there was incriminating silence as to others, and there was deliberate lying about the presence of another customer. In such circumstances the trial court did not commit error in admitting the entire conversation. (*People* v. *Megladdery,* 40 Cal.App.2d 748 [106 P.2d 84]; *People* v. *Gold-*

*stein,* 136 Cal.App.2d 778 [289 P.2d 581].) ██ As was held in *People* v. *Wayne,* 41 Cal.2d 814 [264 P.2d 547], where a defendant's denial of guilt is coupled with an explanation which the jury can reasonably find is false, the accusation and denial and explanation may be admitted as tending to prove the consciousness of guilt.

The other contentions of error are of a minor character. Even if some error occurred in connection with some of the situations, such error could not possibly have been prejudicial.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.