[Crim. No. 3187. Third Dist. Oct. 11, 1961.]

THE PEOPLE, Respondent, v. DAVID ALLEN STOLTZ, Appellant.

Timothy W. O'Brien, Public Defender, and Fred Schlick, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John F. Foran, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—The District Attorney of Mendocino County filed an information against appellant charging him in Count One with having, on the 24th day of June, 1960, murdered one Peter Dorn. By a second count appellant was charged with robbery, in that on the same date and in the same place he robbed Dorn of a billfold and contents of the value of $1.00. By a third count appellant was charged with grand theft, in that on the same date and in the same place he had stolen Dorn's automobile.

After a trial, a jury returned verdicts as follows: Guilty of murder in the second degree; guilty of robbery in the second degree; guilty of grand theft. By the court's judgment appellant was adjudged guilty of second degree murder and guilty of grand theft. No judgment was pronounced on the robbery verdict. This appeal followed.

On June 24, 1960, Dorn was killed in Mendocino County. He was last seen alive in Santa Rosa about 4 p. m., at which time he was driving a Jaguar car and was headed in a northerly direction. He stated to a friend that he was going to his home in Kelseyville, Lake County. About 6:50 p. m. persons camped along the Russian River just south of Hopland heard someone yelling. On investigation they discovered Dorn, unconscious, on the bank of the Russian River, his body partially concealed under a fallen tree. Dorn was moaning and thrashing about. The sheriff's office at Ukiah was notified and about 7 p. m. appellant and one James Rose were intercepted there while driving Dorn's car. Asked by the intercepting officer for his driver's license, appellant handed over Dorn's license and social security card. He told the officer the car belonged to his uncle in Ukiah whom he had taken to Hopland to work. Asked for the address of his uncle he claimed he did not know, but gave the man's name as Fravel. The officer further pursued the matter of appellant's identity and eventually was given appellant's own driver's license, issued by the State of Washington. Questioned about his having the license of Dorn, appellant said he had met Dorn the night before in Ukiah and Dorn had given him the license

for use in California so he would not have to get a California license of his own. He handed over two wallets. One of these contained the identification of Dorn, the other that of the appellant. Appellant and Rose were placed under arrest and at the police station appellant gave a statement which in summary was as follows: He and Rose had left Washington on June 19th and came to California in search of work. They went as far as San Jose and found no employment, then began hitchhiking to Los Angeles, getting as far as King City, where they turned back, intending to return to Washington. They hitchhiked north on Highway 101 until they had crossed the Golden Gate Bridge and were left off at a café. At this point they were picked up by Dorn and the three started north. They stopped at a point on the Russian River where Dorn produced a bottle of whisky, from which the three drank. They went further to another spot along the river and drank more whisky. Dorn told them he had been living with a "queer" who had bought a car for him. Dorn offered to commit acts of perversion on appellant and Rose. Appellant picked up a 4 by 4 about 2 feet long which was on the ground and while Dorn was lying "kind of sideways" appellant hit him on the head with the timber. Dorn turned around, looking angered, so appellant hit him again, then dropped the club and started to run toward the car. Rose picked up the club and hit Dorn on the head again. Dorn was trying to get up when Rose hit him, but after that blow he stayed down. He was breathing and making noise with his mouth. Rose took his wallet and his car keys out of his pocket. There was no money in the wallet as Dorn had given them his only dollar prior to this happening. The two men returned to the car and started north on Highway 101 until they were stopped by the "California Highway Patrol."

Sometime after midnight on June 25th, an officer went to the scene of the crime where he found a 4 by 4 piece of wood, which he brought to the county jail and showed to appellant. On being asked if that was the piece of wood he used to strike Dorn, appellant said it was and then signed his name on the wood with the date. On the day following his arrest, appellant made another statement to the district attorney which conformed substantially to the one given the officer. However, in this second statement appellant said he and Rose had agreed to knock Dorn out and take his car. Appellant was to hit Dorn first if he got the chance. In this second statement appellant also described the incident of striking Dorn in this fashion: That after he had rejected Dorn's advances Dorn turned away

and laid down and while he was lying down and facing away from appellant, the latter struck Dorn on the back of the head with the 4 by 4. Dorn turned around and began screaming and moaning, so appellant hit him on the head again. Appellant said he knew the board was a heavy piece of wood and that it "was big enough to break his head open." Having struck the second blow, appellant dropped the club and ran up the hill, at which time Rose came to Dorn and struck him twice more on the head with the 4 by 4 and took Dorn's wallet and keys. Appellant and Rose then lifted Dorn and carried him over by a log to hide him.

About 8 p. m. on June 24th Dorn was picked up by a member of the California Highway Patrol and brought to the hospital. He was almost completely unconscious and an examination disclosed that he was suffering from concussion and possibly a fractured skull. Brain surgery was deemed necessary, but before it could be performed Dorn died. He never regained consciousness. At the trial an expert pathologist testified that Dorn's death was caused by intracranial bleeding due to multiple skull fractures which, in his opinion, were caused by a number of blows on the head which could not have been self-inflicted. Analysis of Dorn's blood showed no alcoholic content.

Appellant testified in his own behalf. Rose was called as a defense witness but declined to testify on constitutional grounds. Appellant admitted that the accounts of events he had given in his pretrial statements were substantially correct, but as a witness he denied he had struck Dorn more than once, denied agreeing with Rose to strike Dorn and take his automobile, and he added some detailed testimony as to Dorn's homosexual advances toward him. He claimed that he was frightened by these advances and in fright struck Dorn without intent to kill or to rob, or to take Dorn's car, declaring that the decision to take the car was arrived at after Dorn had been struck down. A psychiatrist and neurologist testified for the defense that in his opinion appellant's act of striking Dorn was performed while in a state of panic or extreme fear. The witness said that panic reaction to a homosexual situation is recognized in the field of psychiatry. Another psychiatrist called in rebuttal took a position opposing that of the defense's expert.

Appellant asserts that his appeal is based on two issues, the first of which he defines as follows: "The first issue is to determine the effect of all verdicts. Since the verdicts

are inconsistent, appellant contends conviction of the lesser crime amounts to a verdict of acquittal of the greater crime. Robbery and murder of the second degree cannot be based upon the same transaction; and therefore, the jury verdict convicting the defendant of robbery in the second degree amounts to an acquittal of the greater crime of murder. Robbery should merge in the grand theft conviction.''

Robbery is the taking of property from the person, or immediate presence of another perpetrated by means of force or fear. Implicit, therefore, in the verdict of robbery, whether of first or second degree, is a jury finding that the element of perpetration through force or fear is present. In this case the element of fear cannot be relied upon to support the verdict, for it is the uncontradicted evidence that Dorn was clubbed by appellant first while Dorn was unaware of any intention on the part of either appellant or his companion, Rose, to harm him, to rob him, or to steal his automobile. He was lying on the ground, apparently acceding to the refusal of appellant to permit homosexual activities and he had turned away from appellant. While in this unsuspecting and defenseless position, appellant struck him on the head with the 4 by 4 club. As soon as appellant had ceased to strike Dorn, and had run up the hill, his companion, Rose, picked up the club and assaulted Dorn, who, as appellant testified, thereupon lay down and was still. Rose then rifled his pockets, taking his wallet and his car keys and the two men went to Dorn's car and fled north on the highway. It is apparent that only a short space of time was occupied between the first assault by appellant and the taking of Dorn's car. The acts of the two were continuous. Although the element of fear is absent and cannot be supposed to have been the basis of the jury's verdict of robbery, the element of force was there and it must be assumed that the jury found that the robbery was perpetrated and accomplished through the same force which later caused the death of Dorn. Had the jury followed the instructions of the court, the verdict on the murder charge would have been a verdict of first degree murder as being a killing committed in the perpetration of robbery. However, that was not the verdict of the jury upon the charge of murder. The jury's verdict was that appellant was guilty of second degree murder. Implicit in that verdict is an implied finding of the jury that the murder was not committed in the perpetration of robbery. In this respect, therefore, the verdicts are inconsistent.

The inconsistency between the verdicts on robbery and on murder was apparently recognized by the trial court and that court ignored the robbery verdict, and in effect voided it, electing to proceed to sentence and judgment upon the murder verdict. We are not here concerned with the grand theft verdict and judgment, nor does appellant attack the validity thereof. Appellant argues, however, that the robbery verdict and the murder verdict, being fundamentally inconsistent, destroy each other, and that this court ought to declare the invalidity of both and fix the status of appellant as that of one convicted of grand theft only. Neither the briefs of the parties nor the research of this court has disclosed an exact precedent to be followed. We think, however, that the action of the trial court was correct. The verdict of second degree murder, considered apart from the robbery verdict, is substantially supported by the evidence. The jury could properly find with regard to the murder charge alone that murder of the second degree only had been committed; that the killing had not been done in the perpetration of robbery and had not been premeditated. Supportive of this was appellant's own testimony, although contradictory of his extrajudicial statements, that the intent to rifle the pockets of decedent and to take his automobile was formed after he had been clubbed into insensibility and by way of escape. The property taken was only his billfold containing his identification papers, which corresponded with the title papers carried in the car, and his operator's license, which might be used to explain their possession of the car. Nothing else was taken. Indeed the record is barren of any showing that there was anything else to take other than Dorn's clothing, which was not taken. Nor are we able to conclude from this record that there was any denial of a fair trial by reason of the submission to the jury of the three counts contained in the information, for the proof justified such submission. It may well be that the difficulties of the jury in arriving at a verdict, shown by the record, resulted in a compromise whereby second degree murder and robbery were agreed on rather than robbery and first degree murder, but this cannot be said to appear upon the face of the record. We conclude that appellant suffered no prejudice by the procedure adopted by the trial court when the time came for pronouncing sentence and judgment upon the jury's verdicts.

Next, appellant argues that under the provisions of section 654 of the Penal Code he can be punished only for

grand theft. There is no merit to this contention. The section has no application to the two convictions for which he was sentenced. We do not have here a case of necessarily included offenses. And while the section prohibits double punishment for a single act which violates more than one penal statute, or for a course of criminal conduct which is of such nature as to amount to a single act, yet the statute does not prohibit punishment for different offenses where a separate and distinct act can be established as the basis of each conviction. Here the acts whereby murder was accomplished had ceased before the theft was committed. And the jury could have found that even the design to commit theft arose after the fatal blows had been struck. The course of criminal conduct was clearly divisible. Section 654 does not prohibit punishment for both murder and grand theft under the circumstances shown by the evidence here. (*Neal* v. *State*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839].)

 Appellant contends further that the court erred in permitting the prosecuting attorney to inquire concerning a certain assumed theft of an automobile in the vicinity of King City, at which point, as has been related, appellant and his companion turned back toward their homes in the State of Washington. Appellant charges also that the district attorney was guilty of misconduct in relation to the same matter. Appellant had testified fully in his own defense but had not made mention of anything involving the theft of an automobile at King City. On cross-examination he was asked whether or not he had been in King City, and he replied in the affirmative. He was then asked whether or not he and his companion had stolen a car near Greenfield and driven it north to San Jose and had there abandoned it behind some bushes. Appellant refused to answer on constitutional grounds and his refusal was upheld by the court. There was no evidence introduced as to the assumed theft. However, before the district attorney first embarked upon the inquiry as to auto theft near Greenfield, the jury was excused at his request, and counsel for the prosecution and defense argued the admissibility of the proposed evidence to the court. The prosecution argued that the evidence that it was proposed to elicit upon cross-examination was admissible as tending to establish a fact material to the cause in that appellant in his testimony had denied any motive or intent to steal Dorn's automobile; that evidence that, in order to progress on their return journey, appellant and his companion had stolen an automobile near Greenfield would tend to establish the intent

with which later they took Dorn's automobile; that appellant, by denying such intent had made intent an issue and that it would be material and proper to prove that a similar taking with intent to steal had occurred shortly prior to the events involved in the Dorn killing. ■■ An exception to the general rule that evidence of other offenses or acts of misconduct on the part of an accused are not admissible to prove his guilt of the offense charged is that such evidence is admissible to establish intent with which the crime charged was committed, even though it may tend to prejudice the accused. (*People* v. *Moore,* 48 Cal.2d 541 [310 P.2d 969]; *People* v. *Gallagher,* 168 Cal.App.2d 417 [336 P.2d 259]; *People* v. *Lancaster,* 148 Cal.App.2d 187 [306 P.2d 626]; *People* v. *Mims,* 160 Cal. App.2d 589 [325 P.2d 234].) ■■ We think the evidence was admissible and that the introduction of it might be initiated by asking the appellant on cross-examination whether or not he had so stolen an automobile near Greenfield a day or so before the incident of the taking of the Dorn car near Ukiah. If that be so, then, obviously, the court did not err in permitting the question to be asked on cross-examination; nor could the district attorney be charged with misconduct for seeking to introduce evidence which was material and properly admissible in proof of the People's case. We find neither error on the part of the court nor misconduct on the part of the prosecuting attorney.

The judgment appealed from is affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 6, 1962.

*Assigned by Chairman of Judicial Council.