[Crim. No. 2344.   Fourth Dist.   Oct. 29, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ELIZABETH ANN MORRIS, Defendant and Appellant.

774

Huckenpahler & Dion and Michael A. Dion for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Donald Dungan, City Attorney, Roy E. June, Assistant City Attorney, and Robert L. Humphreys, Deputy City Attorney, for Plaintiff and Respondent.

COUGHLIN, J.—The defendant was charged with violating section 23102, subdivision (a), of the Vehicle Code, i.e., driving a motor vehicle while under the influence of intoxicating liquor; in propria persona, entered a plea of guilty; and was sentenced. Four days later she was charged with violating section 14601 of the Vehicle Code, i.e., driving a motor vehicle at a time when her operator's license had been revoked; thereafter, in propria persona, entered a plea of guilty; and was sentenced to imprisonment in the county jail. Each of the foregoing offenses was based on the same motor vehicle operation occasion. Three days after imposition of sentence in the later case, through an attorney, defendant moved the court to set aside the judgment therein on the ground that its prosecution was proscribed by section 654 of the Penal Code, for which reason the court lacked jurisdiction in the premises. The motion was denied. Defendant appealed to the Superior

Court of Orange County; posted bail; and was released. That court reversed the judgment, but certified the case to this court for hearing and decision. (Cal. Rules of Court, rule 63.) Thereupon, we ordered such a transfer. (Cal. Rules of Court, rule 62.)

It is proper to note at this juncture that, although the appeal was from a judgment on a plea of guilty, as the irregularity of which the defendant complains goes to the legality of the proceedings before the trial court and she sought relief from such in that court the matter properly may be considered by this court. (*Stephens* v. *Toomey*, 51 Cal.2d 864, 870 [338 P.2d 182]; *People* v. *Natividad*, 222 Cal.App.2d 438, 440 [35 Cal.Rptr. 237]; *People* v. *Mistretta*, 221 Cal.App.2d 42, 43 [34 Cal.Rptr. 365]; *People* v. *Rosenberg*, 212 Cal.App.2d 773, 775 [28 Cal.Rptr. 214].)

The provisions of section 654 of the Penal Code proscribe multiple prosecutions for criminal offenses based upon the same act (*Neal* v. *State of California*, 55 Cal.2d 11, 21 [9 Cal.Rptr. 607, 357 P.2d 839]), and apply not only to offenses described in that code but also to those described in the Vehicle Code. (*People* v. *Young*, 224 Cal.App.2d 420, 424 [36 Cal.Rptr. 672]; see also *People* v. *Brown*, 49 Cal.2d 577, 591, fn. 4 [320 P.2d 5]; *People* v. *Manago*, 230 Cal.App.2d 645, 647 [41 Cal.Rptr. 260].)

The offenses included within the proscription are those which arise out of a single "act" in the ordinary sense of that term (*People* v. *Brown, supra,* 49 Cal.2d 577, 591; *People* v. *Manago, supra,* 230 Cal.App.2d 645, 647), and also those which arise out of a course of conduct of such a nature as to amount to a single act, viz., which does not consist of divisible transactions. (*People* v. *Brown, supra,* 49 Cal.2d 577, 591; *People* v. *Manago, supra,* 230 Cal.App.2d 645, 647; *People* v. *Stoltz*, 196 Cal.App.2d 258, 264 [16 Cal.Rptr. 285].)

Where a single physical act constituting an essential element of two or more offenses allegedly is committed by an accused, the prosecution thereof is limited to a single proceeding. (*People* v. *Brown, supra,* 49 Cal.2d 577, 590; *In re Chapman*, 43 Cal.2d 385, 389 [273 P.2d 817]; *People* v. *Logan*, 41 Cal.2d 279, 290 [260 P.2d 20]; *People* v. *Knowles*, 35 Cal.2d 175, 188 [217 P.2d 1]; *People* v. *Greer*, 30 Cal.2d 589, 603-604 [184 P.2d 512]; *People* v. *Rainey*, 224 Cal.App.2d 93, 101-102 [36 Cal.Rptr. 291]; *People* v. *Emory*, 192 Cal.App.2d 814, 826-827 [13 Cal.Rptr. 889].)

The physical act of driving a motor vehicle is an essential factor to both the offense of driving while intoxicated and

driving while the operator's license was revoked. In the case at bench the People relied upon a single act of driving a motor vehicle in support of their dual prosecutions. The charges which were the basis for those prosecutions rested upon the defendant's identical act of operating a motor vehicle at a particular time and place.

The People contend that the "act" referred to in section 654 is a "criminal act"; that the act of driving an automobile is not criminal; and for this reason section 654 does not apply to the instant case. Neither the statute nor the decisions applying such justify such an interpretation. Of particular note are the many decisions applying section 654 where the act under consideration, of itself, was not criminal but became such only because of the status of the alleged victim (*People* v. *Greer, supra,* 30 Cal.2d 589, 601, 603), the condemned purpose of the act (*People* v. *Brown, supra,* 49 Cal.2d 577, 590; *People* v. *Emory, supra,* 192 Cal. App.2d 814, 826-827), or the intent of the actor, e.g., to defraud (*People* v. *Martin,* 208 Cal.App.2d 867, 876 [25 Cal Rptr. 610]). In reality, the argument in support of the People's contention is directed to the proposition that the circumstances at hand support the conclusion defendant was chargeable with separate offenses. The fact that the operation of an automobile while under the influence of intoxicating liquor is a separate offense from the operation of an automobile while the operator's license is revoked, because a particular factor is essential to one and not to the other (*People* v. *Day,* 199 Cal. 78, 83 [248 P. 250]; *People* v. *Kuhn,* 216 Cal.App.2d 695, 700 [31 Cal.Rptr. 253]), does not support the conclusion that, where both offenses arise out of one automobile operation occasion, the act of the operator which is an additional factor essential to each offense also is separate. In applying section 654, "It is the singleness of the act and not of the offense that is determinative." (*People* v. *Knowles, supra,* 35 Cal.2d 175, 187; *People* v. *Martin, supra,* 208 Cal. App.2d 867, 877.)

The purpose of the statute proscribing multiple prosecutions "is a procedural safeguard against harassment . . . . ." (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 21 [9 Cal. Rptr. 607, 357 P.2d 839].) This purpose is particularly served in a case such as the one at bench where a defendant, in propria persona, pleads guilty to a traffic offense; is sentenced; and thereafter is required to respond to a second prosecution for an additional offense arising out of the same case which was the basis for the first prosecution.

The judgment is reversed and the trial court is directed to dismiss the case and exonerate defendant's bail.

Brown (Gerald), P. J., concurred.

WHELAN, J.—I respectfully dissent.
Understanding of the reasons for my doing so requires a rather full treatment of the case.

## THE FACTS

A complaint, dated December 17, 1964, charging defendant with the violation of section 23102, subdivision (a), Vehicle Code, was filed on December 18, 1964, alleging the time and place of the offense as on or about December 17, 1964, on Placentia Avenue, between West Eighteenth and West Nineteenth Streets. Her plea of guilty to that charge was made on December 24, 1964. At that time she presented a temporary driver's license to the court.[1] She waived time for pronouncement of judgment; she was immediately sentenced to pay a fine of $250, which was paid. An abstract of the judgment was thereafter mailed by the clerk of the court to the Department of Motor Vehicles (DMV) in Sacramento.

On June 26, 1964, DMV had revoked defendant's license to operate a vehicle on the public highway for a third or subsequent conviction of driving while under the influence of intoxicating liquor. Defendant signed a receipt for copy of the order of revocation on July 12, 1964.

The complaint charging defendant with a violation of section 14601, Vehicle Code, was filed December 28. It alleged the time and place of the offense as being upon Placentia Avenue on or about December 17, 1964.

On January 12, 1965, the date of defendant's arrest on the second charge, she appeared in court and entered a plea of guilty. Again she waived time for pronouncement of judg-

---

[1]The fact does not appear in the record sent up from the court below. Defendant's counsel in oral argument before this court stated, "there is nothing in the record relative to whether or not Mrs. Morris had at the time of her arrest an operator's license in her possession. There is something in the record relative to the sentencing on December 24, 1964, when she pled guilty, that she did present a temporary operator's license to the court." Just as facts conceded in a brief may be considered on appeal (*Arruda* v. *Arruda*, 218 Cal.App.2d 410, 417 [32 Cal. Rptr. 257]; *Hospelhorn* v. *Newhoff*, 43 Cal.App.2d 678 [111 P.2d 688]), so facts admitted or conceded in oral argument may be considered. (*Browne* v. *Superior Court*, 16 Cal.2d 593, 599 [107 P.2d 1, 131 A.L.R. 276]; *Wangenheim* v. *Garner*, 42 Cal.App. 332, 336 [183 P. 670].)

ment and sentence was imposed immediately that she serve 60 days in jail.

As part of the record on appeal is the following:

### "EVIDENCE MATERIAL To THIS APPEAL

W.E.S. "Each of the aforesaid Vehicle Code violations as charged against Elizabeth Ann Morris, arose out of and were based upon the same ~~arrest and single~~ occasion of her operation of a motor vehicle upon Placentia Avenue in the City of Costa Mesa, California, on December 17, 1964. Roy E. June, Deputy City Attorney for the City of Costa Mesa, and George J. Jeffries, Deputy District Attorney for the County of Orange, have each agreed to stipulate to this evidence for the purposes of this appeal." [*sic*]

The majority opinion states: "Each of the foregoing offenses was based on the same motor vehicle operation occasion." The statement, if true, rests upon the meaning of the stipulation, whose meaning and effect will be discussed later.

### DEFENDANT'S CLAIM OF HARASSMENT

Defendant's claim, accepted by the majority opinion, that the binary prosecution constituted harassment, resulted in prohibited double punishment, and is forbidden by section 654, Penal Code, seems to me to be without merit.

Giving attention to the claim of harassment, it is probable that the cause of the second prosecution was defendant's fraud in producing to the court a temporary driver's permit which could have been obtained only by misrepresentation or concealment on her part. It may be inferred, therefore, that she did not then disclose to the court, nor at the time of her arrest had she revealed to the arresting officer, that her driving privileges had been revoked. Although the record is silent as to whether at the time of her arrest she had already obtained the temporary permit, such fact may be inferred from the fact that she was not at that time charged with driving without a license in her possession. No reason is suggested why the officer would not have arrested defendant on that charge if she had not had at that time some evidence of driving privileges. Those are permissible inferences to be made because of the rule that on appeal all intendments are to be indulged in which will support the judgment, to the exclusion of those tending to detract from it. (*People* v. *McManis*, 122 Cal.

App.2d 891, 899 [266 P.2d 134]; *People* v. *Gutierrez,* 35 Cal.2d 721, 727 [221 P.2d 22].)

The defendant had the right not to give information that might incriminate her. She did not, however, have the right to mislead the court at the time of the pronouncement of judgment on the charge of violation of section 23102, subdivision (a), Vehicle Code. No doubt she received some advantage in the sentence then imposed that she would not have enjoyed had the court then known that she was driving after revocation of her license.[2]

The majority opinion has ignored that aspect of the case.

If the successive prosecutions here involved fall within the prohibitory language of section 654, Penal Code, and the facts making the prohibition operative were known to the court at the time the second sentence was imposed, reversible error would have been committed, regardless of the benefits gained by defendant's fraud. In my opinion, neither of those conditions exist; so that the question should be viewed with an eye to harassment as a violation of a fundamental right, as mentioned in *People* v. *Rosoto,* 58 Cal.2d 304, 328 [23 Cal. Rptr. 779, 373 P.2d 867], where a unanimous court said: ". . . there is no constitutional prohibition against the state's prosecuting different offenses at consecutive trials even though they arose out of the same occurrence, unless such a course would lead to fundamental unfairness. (*Hoag* v. *State of New Jersey,* 356 U.S. 464, 467 et seq. [78 S.Ct. 829, 2 L.Ed.2d 913].)"

That the circumstances may be considered in passing upon the question of harassment is indicated in *People* v. *Rodriguez,* 202 Cal.App.2d 191, 196 [20 Cal.Rptr. 556].[3]

Penal Code, section 654, is not the only safeguard against wrongful harassment which may be caused by successive prosecutions. There is a constitutional protection in the right to the equal protection of the laws and to due process. Section 654, therefore, need not be distorted beyond its actual meaning.

---

[2]The sentence imposed for the violation of section 23102, subd. (a) may not be enlarged although the settled statement says defendant was placed on summary probation; the affidavit of her counsel in support of his motion to set aside the second judgment states the words ''imposition of sentence suspended'' had been struck out from the minute order of December 24.

[3]''Defendant asserts in his brief that the state has improperly harassed him by dividing its case. The circumstances do not justify that conclusion.''

### DEFENDANT'S LACK OF REPRESENTATION.

The fact that defendant was, without counsel at the times of both of her guilty pleas seems to weigh with the majority of the court.

The minutes of the trial court indicate that she was informed of her right to counsel; she knowingly chose to proceed without counsel. One may indulge the speculation that had she been represented at the first sentencing, her attorney would not have consented to be a party to the fraud practiced upon the judge at that time.

### THE MEANING AND EFFECT OF THE STIPULATION

The stipulation referred to was a part of a "Proposed Settled Statement on Appeal" prepared and signed by defendant's counsel. After the making of some changes it became the "Agreed Settled Statement on Appeal." The changes so far as material were the striking out of the words "arrest and single" before the word "occasion." The resultant stipulation is ambiguous. It does not show that the matter stipulated to was brought to the attention of the trial judge either before or at the time judgment was pronounced. It is a stipulation as to a fact; not that the judge knew the fact. If the matter stipulated to had been presented to the trial court at the time or prior to the time of the pronouncement of the judgment appealed from, such fact would be reflected in the record. Therefore, the prima facie presumption, "that the offenses were separate and not indivisible" (*Seiterle* v. *Superior Court,* 57 Cal.2d 397, 400-401 [20 Cal.Rptr. 1, 369 P.2d 697]) was not overcome at the trial court level.

The majority opinion interprets the stipulation to describe "the defendant's identical act of operating a motor vehicle at a particular time and place" and speaks as if the matter stipulated to was evidence before the trial court at the time judgment was pronounced. Later, the majority opinion states that the People relied upon a "single act of driving." This disregards the fact that the word "single" has been stricken from the stipulation in the form requested by defendant.

Thus the majority opinion chooses an interpretation of an ambiguous stipulation, and makes an assumption as to what matters were before the trial judge, that would tend to reverse rather than to support the judgment.

The stipulation, however, is meaningless to show other than that the two offenses occurred on the same day and on the same street. The same occasion of driving on the same street and on the same day might be the occasion of driving many

miles. The first complaint particularizes a single block on Placentia Street; the second does not. The language used is inept to describe the identity of two acts.

The phrase in its ordinary use might describe an extended motoring trip during which many sections of the Vehicle Code might be violated; as one might say "on the occasion of my driving from San Francisco to Los Angeles."[4]

A stipulation should not be given a broader scope than its language imports. (*People* v. *Brennan,* 121 Cal. 495, 502 [53 P. 1098]; *People* v. *Burkhart,* 5 Cal.2d 641, 643 [55 P.2d 846]; *Deevy* v. *Tassi,* 21 Cal.2d 109, 125 [130 P.2d 389].)

Rules for the interpretation of contracts generally are applied in the construction of stipulations. (*People* v. *Nolan,* 33 Cal.App. 493 [165 P. 715].) Therefore any ambiguity should be resolved against the party who prepared the stipulation. (46 Cal.Jur.2d 33.)

### The Question of Jurisdiction

Since defendant pleaded guilty in the action in which the appeal is taken, the majority opinion recognizes as grounds for appeal irregularity that goes to the legality of the proceedings before the trial court from which defendant sought relief by her motion to set aside the judgment.

The majority opinion and the papers in support of the motion state that defendant's motion to set aside the judgment was on the ground that the court lacked jurisdiction. Defendant did not, however, make any claim through her attorney's affidavit that the court knew or was advised prior to judgment of the claimed identity of the act upon which the prosecutions were based. The defendant did not appeal from the order made after judgment that denied her motion.

The claim that the court was without jurisdiction in the second proceeding is disposed of by the holding in *People* v. *Martinson,* 179 Cal.App.2d 164 [3 Cal.Rptr. 449]. There the defendant had pleaded guilty to a charge of reckless driving involving personal injury and paid the fine imposed; when an information was filed later in the superior court charging a violation of another section of the Vehicle Code, arising out of the same accident as that upon which the earlier charge was based, he moved for dismissal under section 995, Penal Code, upon the basis of section 654, Penal Code. The court, through

[4]"Occasion," as a noun, has not been judicially defined in California; the words "for the occasion" have been held to mean a period, as in the specific occasion there under consideration, of from December 12 to the third Monday of January following. (*Ridout* v. *State,* 161 Tenn. 248 [30 S.W.2d 255, 71 A.L.R. 830].)

Peek, J., said: ''Clearly defendant is in fact seeking to prevent double prosecution by his motion under section 995. To this extent the prohibition enunciated in section 654 is analogous to the rule preventing one from being placed twice in jeopardy. It is generally established that a plea of once in jeopardy furnishes no ground for the setting aside of an information. (42 C.J.S., Indictments and Informations, § 204, p. 1177; *People* v. *Mims*, 136 Cal.App.2d 828 [289 P.2d 539].) This is based on the rule that such a plea must be raised as a special defense as provided in Penal Code, section 1017, or it is waived, and since it may be waived it therefore is not jurisdictional. (*People* v. *Blalock*, 53 Cal.2d 798 [3 Cal.Rptr. 137, 349 P.2d 953].)'' (P. 166.)

Courts do not initiate prosecutions. Patently, when a criminal matter comes before a court for trial or for the taking of a plea of guilty, the power and right of the court to give judgment cannot depend upon a fact not brought to the attention of the court; and a claim of double jeopardy or multiple prosecutions, if made to the court, may call for a factual determination.

The plea of guilty to each of the charges admitted at least *prima facie* that the offenses were separate and not indivisible. (*Seiterle* v. *Superior Court*, 57 Cal.2d 397, 400-401 [20 Cal. Rptr. 1, 369 P.2d 697].)

The court did not have before it a probation report, as in *People* v. *Rosenberg*, 212 Cal.App.2d 773 [28 Cal.Rptr. 214], from which information could have been gleaned as to the possible identity of the act upon which the charges were based; nor does it appear that the court did, and it was not necessary that the court should, take any evidence in connection with the guilty plea.

It does not appear that any attempt was made before judgment to reserve the question whether the two offenses were accomplished by a single act, as in *People* v. *Mistretta*, 221 Cal.App.2d 42, 43 [34 Cal.Rptr. 365].

The burden is upon appellant to present a record reflecting the error affirmatively. (*People* v. *Phillips*, 163 Cal.App.2d 541, 545 [329 P.2d 621]; *People* v. *Rocha*, 130 Cal.App.2d 656, 663 [279 P.2d 836].) The ordinary rules that apply to appeals should govern in this case.

### SECTION 654 DOES NOT PROHIBIT THE SUCCESSIVE PROSECUTIONS HERE INVOLVED.

I do not agree that section 654, Penal Code, prohibits successive prosecutions of the respective offenses here involved.

I believe that the relevant authorities support the position that the ''act made punishable'' as spoken of in section 654 is a criminal act.

### (A) Section 654, As Applied To Offenses Involving Motor Vehicles.

The prohibition against multiple prosecutions applies to offenses involving vehicles where the facts warrant.

There should not be convictions of separate counts of grand theft of a vehicle and of driving the same vehicle without the owner's consent in the same county on the same day in consequence of a single unlawful taking of the vehicle. (*People* v. *Kehoe,* 33 Cal.2d 711 [204 P.2d 321].)

The offense of driving without ever having had a license is so related to the offense of driving after a license has been revoked that a conviction can be had for only one of those offenses arising out of the same act of operation. (*People* v. *Lopez,* 43 Cal.App.2d Supp. 854 [110 P.2d 140].)

The offense of one who is properly licensed and drives without the license in his immediate possession, however, has been distinguished in opinions of the Attorney General. After a plea of guilty to driving without a license in the driver's possession, a subsequent prosecution for driving after a license has been revoked is not prohibited by Penal Code, section 654. (38 Ops. Cal. Atty. Gen. 149.) Such successive prosecutions do not constitute double jeopardy, and one offense is not an included offense of the other. (20 Ops. Cal. Atty. Gen. 214.) (In *People* v. *Baxter,* 119 Cal.App.2d 46 [258 P.2d 1093], the court found it unnecessary to pass upon this specific question.)

One who operates a vehicle while under the influence of intoxicating liquor on a public highway, and by doing so is also in violation of an ordinance or statute prohibiting being intoxicated in a public place, should not suffer punishment for both offenses. (But see *People* v. *Burkhart, supra,* 5 Cal. 2d 641, perhaps decided on the theory that the plea of guilty to being intoxicated on a public highway was not shown to have been for the condition of intoxication while driving which resulted in a subsequent conviction for that offense; and *People* v. *Lopez, supra,* 43 Cal.App.2d Supp. 854, 861, decided on the same theory.)

It appears that the area within which the prohibition of section 654, Penal Code, operates has not received the clear definition, the necessity for which appears from some other of the reported decisions.

The decisions in *People* v. *Herbert,* 6 Cal.2d 541 [58 P.2d 909], and *People* v. *Young,* 224 Cal.App.2d 420 [36 Cal.Rptr. 672], are difficult to reconcile. In *Herbert* the defendant pleaded guilty to reckless driving and was sentenced. Thereafter he was charged with manslaughter for the death of a man who died before the reckless driving charge was brought. It was stipulated in the trial court before judgment: ". . . that the said charge of manslaughter was based upon the identical facts . . . upon which defendant had been already sentenced on his plea of guilty to the charge of reckless driving." (P. 544.) The defendant had pleaded once in jeopardy, was found guilty. The judgment was affirmed. *Herbert* has not been disapproved or distinguished.

In *Young,* the defendant was convicted of vehicular manslaughter and two separate counts of felonious drunk driving, one of them for injury to the victim named in the manslaughter charge. The imposition of separate sentences as to the manslaughter charge and the felonious drunk driving charge naming the same victim was held to be error. *Herbert* was not mentioned in the opinion.[5]

If the "single course of conduct" test were applied, there might be said to be a single course of conduct engaged in by a speeding driver whose car struck and killed a pedestrian and then continued to speed away. However, convictions in a single trial followed by separate sentences for manslaughter and for failing to stop and render aid were affirmed in *People* v. *Steinbach,* 166 Cal.App.2d 307 [333 P.2d 147], and in *People* v. *McKee,* 80 Cal.App. 200 [251 P. 675].

The State of New York has a statute (§ 1938 of the Penal Law, Consolidated Laws, ch. 40), the opening clause of which is as follows: "An act or omission which is *made criminal* and punishable in different ways, by different provisions of law, may be punished under any one of those provisions, but not under more than one." [Italics added.] Cases decided under the New York statute have been cited as authority by the Supreme Court of this state. (*Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) The New York statute is said to be "identical with" California Penal Code, section 654. (*Neal* v. *State of California, supra,* 55 Cal. 2d 11, 19.) The words "made criminal," therefore, are actually implicit in section 654.

---

[5]Although it was not stated to be the basis of the decision, *Herbert* might perhaps be distinguished upon the ground that one of the offenses there involved was a misdemeanor, the other a felony. (See cases discussed hereafter.)

In *Martinis* v. *Supreme Court* (1965) 15 N.Y.2d 240 [258 N.Y.S.2d 65], the Court of Appeals, citing *People* v. *Herbert, supra,* 6 Cal.2d 541, held that one who had been found not guilty on charges of driving while in an intoxicated condition and other offenses, was nevertheless subject to a subsequent prosecution for vehicular homicide arising out of the death of persons caused by the same collision from which the earlier charges arose.

Among possible classifications of the many offenses that are based upon the operation of a motor vehicle, some have to do with the physical condition of the operator while driving; others with the manner and speed of driving; others with the operation of unlicensed vehicles; others with the operator's lack of a license or permit to drive, etc.

The case of *People* v. *Dinneen,* 29 Misc.2d 465 [221 N.Y.S.2d 197, 198], may serve to illustrate the proper application of the statutory bar against multiple prosecution and multiple punishment in vehicular cases.

There the defendant was charged with, pleaded guilty to, and was fined for speeding where traffic was controlled by traffic control signal, and other offenses under the Vehicle and Traffic Law. He was separately charged with a violation of another section of the Vehicle and Traffic Law involving speeding where traffic is not controlled by a traffic control signal. The court upheld the defendant's claim that section 1938 of the Penal Law, while it did not forbid convictions, prohibited punishment of the defendant for both speeding violations, stating: "The single, uninterrupted act with which the defendant is charged under both section 1180, subd. 2 (b) and section 1180, subd. 3, of the Vehicle and Traffic Law and the 'material element' under both subdivisions of section 1180 is *speed.*"

### (B)  OTHER QUESTIONS ARISING FROM SECTION 654

There are seeming conflicts and inconsistencies in decisions dealing with other than vehicular offenses.

In *People* v. *Warren,* 16 Cal.2d 103, 110-111 [104 P.2d 1024], after conviction of two defendants for armed robbery, they were tried for violation of section 2 of the Deadly Weapons Act. In affirming, the Supreme Court adopted this language of the District Court of Appeal: " '. . . it is therefore incorrect to say that because robbery in the first degree may result from the possession of a firearm in the hands of an ex-convict, that such possession, as a matter of law, becomes

so integral a part of the crime of first degree robbery that the conviction or acquittal thereof is a bar to a subsequent prosecution for the crime of possession of such deadly weapon.' "

*People* v. *Warren, supra,* 16 Cal.2d 103, considered specifically the effect of section 654, Penal Code. It has not been disapproved, but has been followed in *People* v. *Israel,* 91 Cal.App.2d 773, 779 [206 P.2d 62] ("The fact that the possession of a gun happens to be an element in each offense is immaterial.") ; and in *People* v. *Moore,* 143 Cal.App.2d 333, 341 [299 P.2d 691]. *People* v. *Warren* was cited as authority in *People* v. *Jackson,* 53 Cal.2d 89 [346 P.2d 389].

Seemingly inconsistent with the logic of *Warren* is the opinion expressed in *Kellett* v. *Superior Court,* *(Cal.App.) 45 Cal.Rptr. 355, that the possession of a firearm by an ex-felon is a necessarily included offense in a violation of section 417, Penal Code, if an ex-felon brandishes the weapon. It would not be such a necessarily included offense under the rule enunciated in *People* v. *Kehoe, supra,* 33 Cal.2d 711, 713, that in determining whether section 1023, Penal Code, is applicable to a specific situation, it is necessary first to determine whether a given crime, *by definition, necessarily and at all times* is included within another one. The opinion in *Kellett* does not quote the language of the accusatory pleadings. Therefore, it cannot be said on the basis of the opinion that the rule applies which was declared in *People* v. *Marshall,* 48 Cal.2d 394, 405 [309 P.2d 456], that the yardstick for determining included offenses is the language of the accusatory pleading.

One problem is that separate offenses may arise out of a single act, one of which is a felony, and the other a misdemeanor that is not an included offense. In such case the superior court would be without jurisdiction to try the misdemeanor. (*People* v. *Kennedy,* 133 Cal.App.2d 693 [284 P.2d 898].)

The fact that one offense is a misdemeanor and the other a felony has been mentioned as a basis for two separate prosecutions in *People* v. *Rodriguez, supra,* 202 Cal.App.2d 191, 196. *People* v. *Ayala,* 167 Cal.App.2d 49 [334 P.2d 61], relied upon in *People* v. *Rodriguez, supra,* does not mention that point. Both cases had to do with felony prosecutions for possession of narcotics following judgments and sentences for narcotic addiction when that condition was punishable as a misdemeanor.

---

*A hearing was granted by the Supreme Court on August 25, 1965. The final opinion of that court is reported in 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206].

If a felony and a misdemeanor that is not necessarily included in the felony may be the subject of successive prosecutions because neither the superior nor the municipal court has jurisdiction to try both offenses, then the decision in *Kellett* v. *Superior Court, supra,* would have been improper (except upon the theory that the possession of a firearm by the ex-felon was an included offense), as would *People* v. *Manago,* 230 Cal.App.2d 645 [41 Cal.Rptr. 260], cited in the majority opinion.

However, in *Manago,* the reversal of a judgment of conviction of burglary is defensible on two grounds: first, because the evidence in both trials was as to the identical conduct of Manago; second, because to be armed upon the premises burglariously entered is an intended consequence of armed burglary, whether the offender lurk or hide, and burglars are likely to do either or both of those things. Probably the city ordinance in question was intended to reach persons against whom a charge of burglary might be difficult to prove.[6]

The *Kellett* opinion finds some justification in the fact that the misdemeanor complaint was filed on October 15, 1964, and the plea of guilty thereto was filed on January 20, 1965, after it was known that defendant was a convicted felon. An information was filed on the felony charge on November 17.

Such possible justification for the opinion in *Kellett* v. *Superior Court, supra,* will often be lacking. Although it was known that Kellett was a convicted felon when his plea of guilty to the misdemeanor charge was accepted, an ex-convict whose status as a previously convicted felon is neither known nor observable to the officer making the arrest, might be arrested for violation of section 417 of the Penal Code, be charged with that crime, plead guilty and be sentenced for it before his felony record became known.

Other possible instances may be cited of concurrent violations of distinct statutes involving some common act or the use of a common instrumentality in which the existence of at least one essential element of one of the offenses is known

---

[6]Manago had been seen in the employees' locker room of a department store where he had no right to be, going through clothing in two of the lockers. He was armed with a deadly weapon. He was charged in the municipal court with violation of a city ordinance making it a misdemeanor for a person so armed to ''hide, lurk or loiter upon the premises of another,'' and in the superior court with burglary. After a jury had failed to agree upon a verdict in the burglary prosecution, Manago, in a second complaint was again charged with the misdemeanor, was tried and found guilty thereof and sentenced therefor. Thereafter he was retried on the burglary charge and convicted.

to the defendant but could not be testified to by an arresting officer and would not be apparent to him.

An ex-felon might have in his hotel room some of the equipment mentioned in section 11555, Health and Safety Code, and a weapon capable of being concealed on the person; he might be charged with, plead guilty to, and be sentenced for the misdemeanor before it was discovered that he was an ex-felon.

A person, for sufficient cause, might be arrested and found to have on his person pills, in violation of Business and Professions Code, section 4230, and a wristwatch, which was stolen property; that fact and the existence of circumstances that strongly indicated the defendant's knowledge of that fact might not be discovered by the police until judgment was pronounced upon the misdemeanor charge.

A motorist operating a vehicle without the owner's consent might be halted and charged with a minor Vehicle Code violation. The fact that the motorist is operating the vehicle in violation of section 10851, Vehicle Code, might be neither known nor apparent to the officer making the arrest; and might not be disclosed by the motorist, who might be charged with, plead guilty to and receive judgment on the minor violation before it was discovered that he had also committed a felony.

There is no reason to favor the violator whose concealment of facts nonapparent to an arresting officer may produce successive prosecutions for crimes that in their criminal essentials are distinct and separate. To do so would make the prosecution of crime a game of thimble-rigging, in which the offender manipulates the shells.

In dealing with the question of harassment resulting from successive prosecutions that do not come within the meaning of the proscriptive wording of section 654, consideration should be given to the right to a speedy trial. One charged with a crime should not be presumed guilty of some nonapparent crime; and his right to a speedy trial should not be suspended during an exploration of the possibility that another undisclosed crime has been committed.

SECTION 654, PENAL CODE, SPEAKS OF A CRIMINAL ACT

The majority opinion has accepted the defendant's contention that she is protected by section 654 because both offenses arise out of her "same act" or "indivisible course of conduct." It does not take into consideration the fact that the act mentioned in section 654 is a criminal act; nor, in quoting the words "a course of conduct," from *People* v. *Knowles,*

35 Cal.2d 175 [217 P.2d 1], that *Knowles* spoke of "a course of *criminal* conduct." [Italics added.]

If defendant's claim, accepted by the majority opinion, that driving is the act referred to in section 654, rather than the acts of driving while under the influence of intoxicating liquor, and of driving after revocation of a license, then I postulate that the concurrent possession of various kinds of contraband, of which I have given some hypothetical instances, is likewise such a single act.

The crime of possession of a narcotic or of the paraphernalia mentioned in section 11555, Health and Safety Code, involves the act of possessing; so does the crime of possession of a firearm by a convicted felon; likewise the crime of possession of stolen property, knowing it to have been stolen.

The decision of the majority did not rule on defendant's further contention that she can be punished only once for the two offenses. The contention should, however, be considered. If there is in fact only one act of this defendant which is punishable under two different statutes, it follows that there could be punishment for only one of the offenses. Consecutive jail sentences could not be imposed even though both offenses might have been joined in a single complaint and prosecution.

Section 654, Penal Code, proscribes double punishment, not double conviction: ". . . conduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of both crimes, only one of which, the more serious offense, may be punished." (*People* v. *McFarland*, 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449].)

"Thus it is established that section 654 prohibits multiple *punishments* for a single act, but like the jeopardy doctrine, has no application to multiple *convictions* as such, in a *single prosecution*. It *does* by its carefully chosen language, extend its reach to prohibit *subsequent* prosecution." (*People* v. *Tideman*, 57 Cal.2d 574, 586-587 [21 Cal.Rptr. 207, 370 P.2d 1007].)

The Supreme Court did not rule, in *Neal* v. *State of California, supra,* 55 Cal.2d 11, that there might be multiple punishments of two offenses for which, under section 654, there could be only one prosecution.

Indeed, the court said that it did not decide that point.

". . . we do not decide whether section 654 requires all of the prosecutions to be brought at the same time." (P. 21.)

There is no reason to think that when the court, in *Neal,* said that double prosecution may be precluded even when

double punishment is permissible, it intended to extend the statement beyond factual situations similar to those there involved. *Neal* dealt with a single act of arson intended to bring about the death of two persons. Section 654 in terms bars a second prosecution for the criminal act of arson which resulted in the attempted murder of the two intended victims. The permissible double punishment there referred to was not for arson and attempted murder but for separate convictions of attempted murder with two different victims.

To emphasize that the section proscribed double prosecution as well as double punishment does not mean that section 654's proscription against double prosecution is more wide reaching than its proscription against double punishment. It follows that if there may be only one prosecution for two separate offenses because they are the separate fruits of a single act, then there may be only one punishment for them, unless, as in *Neal* and other similar cases, there are several victims.

The ''act'' mentioned in section 654 that is punishable under two or more provisions of law must be a criminal act; for any act to be punishable under the Penal Code demands that it be a criminal act.

When, therefore, *People* v. *Knowles, supra,* 35 Cal.2d 175, speaks of ''the singleness of the act,'' as distinguished from the singleness of the ''offense,'' it must mean the singleness of a criminal act which may have resulted in more than one defined offense.

The words ''ordinary sense of the term'' in the quotation ''single act in the ordinary sense of the term'' (*People* v. *Brown,* 49 Cal.2d 577, 591 [320 P.2d 5]) should not be taken to mean a noncriminal act as distinguished from a criminal act; but to mean a single criminal act as distinguished from a criminal course of conduct.

The majority opinion does not make that distinction when it states: ''The offenses included within the proscription are those which arise out of a single 'act' in the ordinary sense of the term . . . and also those which arise out of a course of conduct.'' In that statement the majority opinion disregards that where in *People* v. *Brown, supra,* 49 Cal.2d 577, 591, the court spoke of ''one 'act' in the ordinary sense,'' the act it specified was the ''single act of placing a bomb in an automobile'' (*People* v. *Kynette,* 15 Cal.2d 731 [104 P.2d 794]), certainly a criminal act.

Indeed, the majority opinion goes so far as to lay it down that: ''Where a single physical act constituting an essential element of two or more offenses allegedly is committed by an

accused, the prosecution thereof is limited to a single proceeding." This extends the application of section 654 with regard to prosecutions beyond the guide lines found in the following language: ". . . the applicability of section 654 is not limited to necessarily included offenses. If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated. *If only a single act is charged as the basis of the multiple convictions,* only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses.[7] It is the singleness of the act and not of the offense that is determinative." [Italics added.] (*People* v. *Knowles, supra,* 35 Cal.2d 175, 187.)

Section 954, Penal Code, declares that "an accusatory pleading may charge two or more different offenses connected together in their commission," or "different statements of the same offense." It seems, almost, as though the majority opinion regards "two or more different offenses connected together in their commission" as having the same meaning as "an act . . . made punishable . . . in different ways." It is pellucid that offenses connected together in their commission will not always be the result of an act made punishable in different ways; that what has been made permissive by section 954 is not therefore in every instance made mandatory by section 654.

The applicability of section 654, Penal Code, to successive prosecutions against the same defendant should receive, if possible, clear definition. A simplistic application of the statute can only result in a further amoebic spread of confusing opinions.

We find, for instance, these rules declared: that "A single manifestation . . . of the defendant's reproductive instinct" may be applied to a "whole series of acts" (*People* v. *Ross,* 234 Cal.App.2d 758, 766 [44 Cal.Rptr. 792]; that the "single arrest and observations of the arresting officer" (*Kellett* v. *Superior Court, supra*) must limit the prosecution of two distinct crimes, even when a necessary element of one crime cannot be testified to and is not apparent to a viewer of the defendant's conduct.

---

[7]The theory that the conviction must be reversed has been rejected by *People* v. *McFarland, supra,* 58 Cal.2d 748, 763.

Such declarations may be gravid with future problems for those who might attempt to apply them to new situations.

The phrase "one automobile operation occasion" is sufficiently loose as a definition of "an act made punishable in different ways" as to be capable of producing a brood of unwanted jural progeny.

It should be possible to place the authoritative decisions on the subject into categories so as to permit of logical extension to other situations, whether the claim be of double jeopardy, multiple punishment or multiple prosecution; and so as to make allowance for the declaration of *Neal* v. *State of California, supra,* 55 Cal.2d 11, 19: "If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."

Elsewhere, *Neal* speaks of "the means" used to perpetrate a crime, which were themselves criminal means, thus indicating causality of the criminal act or criminal intention as a signpost giving direction through what otherwise may be "a wilderness of single instances."

The following classifications, not all mutually exclusive and not suggested to be all-inclusive, may serve as a starting point for a better definition:

1. If one of the crimes includes, or is included, in the other necessarily and by definition. (Assault and theft with relation to robbery, etc.); or because of the language of the accusatory pleading contains a description of another not necessarily included offense. (*People* v. *Marshall, supra,* 48 Cal.2d 394; *People* v. *Powell,* 236 Cal.App.2d 884, 885-886 [46 Cal.Rptr. 417].)

2. If a single act, by reason of the relationship of defendant and a victim, constitutes a violation of more than one statute. (Incest, involving rape, or a violation of sections 288 or 288a, or contributing to the delinquency of a minor, etc.)

3. If a single act constitutes a violation of more than one statute by reason of the age or status of the victim or the status of the defendant. (Rape or a violation of section 288a, Penal Code, the victim of which is under the age of 14, when the act becomes also a violation of section 288, Penal Code (*People* v. *Greer,* 30 Cal.2d 589 [184 P.2d 512]; *People* v. *Ross, supra,* 234 Cal.App.2d 758); using a minor to transport narcotics which is also the crime of contributing to the minor's delinquency (*People* v. *Krupa,* 64 Cal.App.2d 592 [149 P.2d 416]) etc.; assault upon an officer in the performance of his duties; theft of public funds by an official entrusted with them, etc.)

4. If the criminal act produces a consequence not specifically intended, which is likewise a crime. (Murder as the result of abortion (*People* v. *Brown, supra,* 49 Cal.2d 577; *People* v. *Emory,* 192 Cal.App.2d 814 [13 Cal.Rptr. 889]); the killing of one person by means of a felonious assault directed against a third person (*People* v. *Brannon,*[8] 70 Cal.App. 225 [233 P. 88]); manslaughter in the driving of a vehicle and felony drunk driving causing bodily injury to the same victim (*People* v. *Young, supra,* 224 Cal.App.2d 420).)

5. If the criminal act has an intended consequence that is likewise a crime. This category could be defined also as follows: If the commission of an intended criminal act is accomplished by a process or instrumentality, the use of which is separately defined as a crime. (Kidnaping for purpose of robbery (*People* v. *Knowles, supra,* 35 Cal.2d 175); assault with deadly weapon in commission of first degree robbery (*People* v. *Logan,* 41 Cal.2d 279 [260 P.2d 20]); issuing check without sufficient funds as the instrumentality for grand theft of money obtained thereby (*People* v. *Martin,* 208 Cal. App.2d 867 [25 Cal.Rptr. 610]); murder and kidnapping as means of committing robbery (*People* v. *Teale,* 63 Cal.2d 178, 198 [45 Cal.Rptr. 729, 404 P.2d 209]); robbery and possession of narcotics to obtain which the robbery was committed (*People* v. *Quinn,* 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705]); grand theft as a result of burglary (*People* v. *McFarland, supra,* 58 Cal.2d 748); malicious use of explosives resulting in attempted murder and assault with intent to commit murder (*People* v. *Kynette,* 15 Cal.2d 731 [104 P.2d 794]; arson resulting in attempted murder (*Neal* v. *State of California, supra,* 55 Cal.2d 11); conspiracy to commit perjury, the resultant perjury [as an aider and abettor because of the conspiracy], subornation of perjury, conspiracy to give a false report of the commission of a crime, and conspiracy to cause false imprisonment, based upon essentially the same conduct (*People* v. *Rainey,* 224 Cal.App.2d 93 [36 Cal.Rptr. 291]).)

### Conclusion

*Neal* v. *State of California, supra,* 55 Cal.2d 11, declares the rule against multiple prosecutions to be a procedural safeguard against harassment. In that respect the rule does not

---

[8]However, there were two successive prosecutions in *Brannon,* a conviction under the second of which was upheld. The defendant had requested that the trials be separate.

rest exclusively upon section 654. The language of section 654 itself does not extend the rule against multiple prosecutions beyond the limits of the rule against multiple punishments. The proscription against harassment through multiple prosecutions finds support also in the constitutional right to due process and the equal protection of the laws.

The question of harassment of the defendant sometimes may be one of fact. Under all of the circumstances of this case, there was no harassment of defendant.

The act mentioned in section 654 is a criminal act; there was no single criminal act committed by defendant here that was punishable under two statutes; the separate criminal acts committed by her were not related except in the instrumentality used, an automobile, which was not itself a criminal instrumentality.

The trial court did not exceed its discretion in denying defendant's motion to set aside the judgment, made upon the ground of lack of jurisdiction. If the motion be viewed as a petition for writ of error *coram nobis,* it was not supported by a showing of an essential element, that the facts were not known to defendant prior to entry of judgment. (*People* v. *Welch,* 61 Cal.2d 786, 791 [40 Cal.Rptr. 238, 394 P.2d 926].)

Defendant has not pointed out any error in the proceedings on the trial court up to and including the pronouncement of judgment.

I would affirm.

Respondent's petition for a hearing by the Supreme Court was denied December 22, 1965. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.